THE VILLAGE OF RIDGWAY *et al.*

*v.*

THE COUNTY OF GALLATIN *et al.*

*Opinion filed October 19, 1899.*

1. STATUTES—*repeals by implication are not favored.* Statutes will be so construed as to avoid the repeal by implication of one act by a subsequent enactment, if such repeal can be avoided by any reasonable hypothesis.

2. SAME—*when subsequent general law does not repeal prior special law.* A subsequent general law does not repeal a prior special law, and if the later statute does not contain negative words it will not repeal the particular provisions of the special law on the same subject, unless it is impossible that both should be enforced.

3. ELECTION—*county seat election may be held under the act of 1872.* An election to determine whether a county seat shall be removed is properly conducted in compliance with the provisions of the special act for the removal of county seats, in force July 1, 1872, (Rev. Stat. 1874, p. 315,) and need not be held under section 16 of the Ballot law of 1891, (Laws of 1891, p. 113,) as the latter act does not repeal the former.

APPEAL from the Circuit Court of Gallatin county; the Hon. P. A. PEARCE, Judge, presiding.

E. B. GREEN, THEODORE G. RISLEY, GEORGE W. PIL-
LOW, and W. S PHILLIPS, for appellants:

A proposition to remove a county seat is a proposi-
tion to vote upon a "public measure" by the people, with-
in the meaning of section 16 of the act of June 22, 1891,
and must be voted upon in the manner prescribed by that
act. 2 Starr & Cur. Stat. sec. 16, p. 1686.

Since the passage of the act of 1891 a vote upon any
public measure must be had in pursuance of section 16 of
that act. The ballots must designate the measure to be
voted on, and must contain the words "Yes" or "No," and
the elector must designate his vote by a cross made op-
posite the word "Yes" or "No," as he may see fit to vote.
*County of Union* v. *Ussery,* 147 Ill. 204.

Section 119 of the act on elections provides: "The
judgment of the court, in cases of contested election,
shall confirm or annul the election according to the right
of the matter." Rev. Stat. 1874, p. 466.

The power conferred by section 119, *supra,* to "confirm
or annul the election," is sufficiently broad and compre-
hensive to authorize a court of chancery to determine the
legality of the election and to declare it illegal and void.

C. S. CONGER, GEORGE B. PARSONS, D. M. KINSALL,
and CARL ROEDEL, for appellees:

The act of 1872, entitled "An act to provide for the
removal of county seats," (1 Starr & Cur. Stat. p. 1117,) is
special in its character, and is intended to operate upon
a particular subject—elections for the removal of county
seats—and no other; but the act of 1891 is a general law
upon the subject of elections. The principle is therefore
applicable that a subsequent statute which is general
does not, by implication, repeal a former statute which
is particular, though inconsistent with it. *Butz* v. *Kerr,*
123 Ill. 659; *Trausch* v. *County of Cook,* 147 id. 534; *Ottawa*
v. *County of LaSalle,* 12 id. 339; *Rankin* v. *Cowden,* 66 Ill.
App. 137.

The repealing clause of the Ballot law of 1891, which is, "all acts and parts of acts inconsistent with the provisions of this act are hereby repealed," does not necessarily affect or modify the act of 1872. The two acts are not inconsistent. The one applies only to an election on a particular question, and the other is made by its very terms to apply only to elections for public officers, (2 Starr & Cur. Stat. sec. 1, p. 1681,) and is not contrary to the Removal act.

Section 1 restricts the use of an Australian ballot to elections "for public officers," and this restriction is industriously guarded in the subsequent sections of the act. Where a statute specifies the things to be affected by its provisions there is an implied exclusion of others. *Gaddis* v. *Richland County*, 92 Ill. 124; *Sammis* v. *Clark*, 13 id. 544; Sutherland on Stat. Const. sec. 327.

The repugnance or inconsistency between the two acts is only apparent and not real, and is not irreconcilable; and if the two statutes are capable of being so construed that both may stand it is the duty of the courts to do so. *Holton* v. *Daly*, 106 Ill. 131; *Munson* v. *Crawford*, 65 id. 185; *Bruce* v. *Schuyler*, 4 Gilm. 221; *Harding* v. *Railroad Co.* 65 Ill. 90; *People* v. *Brayton*, 94 id. 341.

The general expressions of one section of an act will be restrained or limited by the particular provisions of others, where the manifest intent of the legislature requires it. *Biggs* v. *Clapp*, 74 Ill. 338; Potter's Dwarris on Stat. 188; *Gillinwater* v. *Railroad Co.* 13 Ill. 4.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On November 15, 1898, an election was held in the county of Gallatin to determine whether the county seat should be removed from the city of Shawneetown to the village of Ridgway, and resulted in a majority of two hundred and twenty-one votes against such removal. The village of Ridgway and certain residents of the county,

who were electors and tax-payers therein, filed the bill in this case praying that the election might be declared illegal and void. The bill did not charge any fraud or illegal voting, and the only ground upon which complainants asked to have the election set aside was, that it was held and conducted in compliance with the provisions of the special act for the removal of county seats, in force July 1, 1872, and not in accordance with what is commonly known as the Ballot law, providing for the printing and distribution of ballots at public expense. The county of Gallatin and others were made defendants and demurred to the bill, and the parties stipulated that the case should be submitted to the court upon the bill and the demurrer filed thereto, and should be decided upon the following points: "First, should the election have been held under the provisions of the law commonly called the Ballot law, being 'An act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices, to regulate the manner of holding elections, and to enforce the secrecy of the ballot,' approved June 22, 1891, in force July 1, 1891; second, would a bill in equity lie at time of filing the bill, based solely upon a failure to comply with said Ballot law." The court sustained the demurrer and the complainants elected to stand by their bill, whereupon it was dismissed at their cost, and this appeal followed.

The act of 1872 is special in its nature for the purpose of regulating a particular class of elections—for the removal of county seats. The people, in framing the constitution, considered that subject of sufficient importance to make special provisions in relation to it and to provide different qualifications for electors from those required at other elections. Section 4 of article 10 of the constitution provides that no county seat shall be removed except in accordance with a vote in favor of its removal in such manner as shall be provided by general law; that no person shall vote on such question who has not resided in

the county six months and the election precinct ninety days next preceding the election, and that the question shall not be submitted to the people oftener than once in ten years. The legislature, being required to provide by a general law for elections of this character, passed the act of 1872, providing a complete system for holding such elections. The act requires that they shall be held on the second Tuesday after the first Monday of November, at the usual place of holding elections, and provides for the petition and contest of the same, the hearing by the county court, the appointment of resident legal voters of the points contesting for the location, as challengers, the form of the ballot, the hours of the election, the qualifications of voters, the form of oath for the voter and his witnesses, the canvass of the returns, the contest of the election, and all details connected with the subject. The Ballot law passed in 1891 does not contain any express repeal of the special act of 1872. There is no direct reference to it, or anything which would constitute such express repeal. The act of 1891 contains the provision that "all acts and parts of acts inconsistent with this act are hereby repealed," but that adds nothing to the legal effect of its passage. Without that provision any previous act inconsistent with it would be repealed, and such a repeal constitutes an implied repeal or repeal by implication. A repeal of the act of 1872 can only result on account of such inconsistency between the two acts that they cannot both stand. Such a repeal is not favored in the law, and a later statute will never be held to repeal an earlier one, unless they cannot be reconciled. It is the duty of the courts to construe them so as to avoid repeal, if such a construction can be given, and a statute will never be held to be repealed by implication if it can be avoided by any reasonable hypothesis. (*Town of Ottawa* v. *County of LaSalle*, 12 Ill. 339; *Tyson* v. *Postlethwaite*, 13 id. 727; *People* v. *Brayton*, 94 id. 341; *Hunt* v. *Chicago Horse and Dummy Railway Co.* 121 id. 638; *Butz* v. *Kerr*, 123 id. 659.)

It is also the rule that a subsequent law which is general does not abrogate or repeal a former one which is special and intended to operate upon a particular subject, and that if the later statute does not contain negative words it will not repeal the particular provisions of the special law on the same subject, unless it is impossible that both should be enforced. (*Covington* v. *City of East St. Louis,* 78 Ill. 548; *Gunnarssohn* v. *City of Sterling,* 92 id. 569; *City of East St. Louis* v. *Maxwell,* 99 id. 439; *Village of Hyde Park* v. *Cemetery Ass.* 119 id. 141; *Trausch* v. *County of Cook,* 147 id. 534.) Now, the act of 1891 does contain negative words as to the use of other ballots than those therein provided for in the case of elections for public officers, but has no negative words applying to any other class of elections. Section 1 of that act prohibits the use of any other ballots at any election for public officers, except for trustees of schools, school directors, members of boards of education and officers of road districts in counties not under township organization, but the act contains no negative word or word of prohibition as to the use of other ballots at an election where public officers are not voted for, like this election, where they are not and cannot be voted for.

Again, the Ballot law of 1891 specifies in said first section the kind of elections at which the ballots therein provided for shall be used. Those are the ones just named, where public officers are voted for. Elaborate provisions are made for the nomination of candidates for public offices, and for certificates of nomination, withdrawals, vacancies and objections, and for the printing and distribution of the ballots. The second section, providing for the expense of printing and delivering ballots, defines the term "general election," as used in the act, as applying to any election held for the choice of a national, State, judicial, district or county officer. Section 15 provides for the printing of the ballots, as follows: "For all elections to which this act applies, the county

clerks, in their respective counties, shall have charge of the printing of the ballots for all general elections, and shall furnish them to the judges of election. The city, town or village clerk shall have charge thereof and furnish them in all city elections, and the town clerk in counties under township organization shall have charge thereof and furnish the same in all town elections to which this act applies." The election to remove a county seat is, of course, neither a city election nor a town election, and it is not a general election under this act, because not within the definition contained in section 1. In *People* v. *Cowden*, 160 Ill. 557, we held that the absence of a provision in the act of 1891 for providing ballots for an election to establish a high school showed that it was the legislative intention that the act should not apply to such an election. We said (p. 560): "No provision, here or elsewhere in the act, is made for printing and distributing ballots for school elections, and it is therefore clear that the legislature, by providing, as we have seen, for the printing and distributing of ballots 'for all elections to which this act applies,' manifested an intention that the act should not apply to school elections." The ballots, under the act of 1891, cannot be printed, furnished or distributed for an election to remove a county seat on account of the lack of any provision in the law, and what was said in the above case has equal force here.

The fourteenth section of the act fixes the place where the question shall be printed upon the ballot in case a constitutional amendment or other public measure is submitted to a vote, and provides that such place shall be after the list of candidates for offices. The constitution does not authorize the submission of a constitutional amendment except at an election of members of a General Assembly, and the legislature doubtless had in mind the submission of such amendments and other public measures at elections where there were candidates for offices. The reliance of complainants is on section 16

alone, but when read in connection with the other sections, it will be seen that it was intended to give a form for stating the proposed measure, and the space on the margin and the designation of the place for marking, by the words "yes" or "no." The act had already provided, by section 14, where the question should be printed, and that section gave the form for putting the list of candidates on the ballot. Section 16 was apparently designed to furnish the same guide for the constitutional amendment or other public measure.

The legislature, in providing by special law for this particular sort of an election, by the act of 1872 directed the county court to appoint three legal resident voters of each locality contending for the location to act as challengers and to sit with the regular judges at the opposite competing point, and made careful provisions to enable these challengers to be away from their precincts during the whole time of the election and yet to preserve their right to vote. The act applied to a special subject attended with great difficulties and strong temptations, exciting whole communities to fraudulent practices, and there was special reason for the protection of voters by these challengers representing the contesting localities. In the act of 1891 there is no substitution for this most important right and protection, and the legislature certainly did not intend to destroy it where they have not expressly repealed the act or used any negative words showing an intention that it should not continue to be in force.

In *County of Union* v. *Ussery*, 147 Ill. 204, the court included the removal of county seats with other elections in illustrating what constituted a public measure, but there was no question in that case whether such an election should be conducted under the Ballot law, and questions now involved in this case were not decided by it. In that case the question of stock running at large was submitted at the general election in November, 1891, when

public officers were voted for, and the election was one of those governed by the Ballot law.

Having determined that the election was properly held and conducted under the law of 1872, it is unnecessary to notice the second question submitted by the stipulation.

The decree is affirmed.                    *Decree affirmed.*