The People ex rel., etc., v. John B. Mount, Mayor of Joliet.

1. DRAM-SHOP LICENSE—*Power of Municipalities to Determine the Amount of.*—A city is without authority to determine the amount of license to keep a dram-shop by resolution; it can legally fix the same only by an ordinance.

2. ORDINANCES—*Repeal of.*—An ordinance legally enacted can not be repealed by resolution.

3. CITIES AND VILLAGES—*When Ordinances are Necessary.*—Acts of municipal corporations, which are legislative in their character, must be enacted in the form of ordinances, and not of resolutions.

4. DRAM-SHOP—*Power to License.*—The power to license, regulate or prohibit is a dormant power, and affords no authority to issue licenses until it is called into life and put into operation by appropriate legislation by the proper authorities.

5. SAME—*Requisites of the Legislation.*—Without the adoption of a general ordinance on the subject, authorizing the issuing of licenses, and specifying who shall issue them, the length of time they shall run, the amount to be paid by the applicant, the time and manner of payment, etc., municipal authorities are powerless to issue license to any one.

6. CONSTRUCTION OF STATUTES—*Repeal by Implication—Rules.*—The law does not favor a repeal by implication. The earliest of two statutes continues in force unless the two are clearly inconsistent with, and repugnant to each other, or unless in the latest statute some express notice is taken of the former. plainly indicating an intention to repeal it. Where two acts are seemingly repugnant, they should, if possible, be so construed that the latter may not operate as a repeal of the former, by implication, So a subsequent statute, which is general, does not abrogate a former statute which is particular.

7. SAME—*General Statute Without Negative Words—Repeals.*—A general statute without negative words will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent.

8. SAME—*Inconsistent Acts.*—If two statutes said to be inconsistent can be so construed that each may be enforced, such construction is to be adopted as will give effect to the legislative will, as expressed in each act.

9. SAME—*Subsequent Acts Without Negative Words.*—A subsequent law which is general, does not abrogate or repeal a former one which is special, and intended to operate upon a particular subject; and if the latter statute does not contain negative words it will not repeal the particular provisions of the special law on the same subject, unless it is impossible that both should be enforced.

The People v. Mount.

**Mandamus.**—Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 1, 1900.

HALEY & O'DONNELL, C. W. BROWN and MARK G. HARRIS, attorneys for appellant.

RICHARD J. BARR, COLL MCNAUGHTON and GEORGE S. HOUSE, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a proceeding instituted by the appellant William Conlon, as relator, for a writ of mandamus to compel appellee, as mayor of the city of Joliet, to sign a dram-shop license.

The petition was filed July 7, 1899, and avers that the relator is a citizen and taxpayer of the city of Joliet, which is incorporated under the general laws of the State, and is authorized by its charter to license and regulate the sale of liquors; that said city has in force an ordinance in regard to the sale of intoxicating liquors, which provides for the issuing of licenses to sell the same to persons who shall apply and give bond in the manner therein provided, upon their "paying for such license for the use of said city at a rate that may be from time to time established per annum;" that since the 1st day of July, 1892, and before the commencement of each municipal and fiscal year, the city council has regularly fixed and established the dram-shop license fee for each of said years, as provided by said ordinance; that on June 26, 1899, the city council fixed, by resolution, said license fee at the sum of $500; that on June 27, 1899, the relator presented his petition for a dram-shop license, and filed the bonds required by the city ordinance and the laws of the State, with the city clerk, and that said bonds were on the same day duly approved by unanimous vote of the city council; that on July 1, 1899, the relator paid to the city treasurer the sum of $500 as required by the ordinance and resolution, and the latter issued his receipt therefor; that the receipt was presented to the city

clerk and a demand made upon him for a dram-shop license; that the clerk prepared and countersigned a license in the form prescribed by the ordinances, authorizing the relator to conduct the business of dram-shop keeper from July 1, 1899, to July 1, 1900; that the relator presented said license and receipt to the respondent and requested him, as mayor, to sign said license, but that respondent then and there refused to sign the same and still neglects and refuses so to do; that by the ordinances of said city it is provided that no license shall be granted for a longer period than one year, and all licenses shall be signed by the mayor and countersigned by the city clerk, under the corporate seal; that by force of the ordinance and laws of the State of Illinois it was the duty of respondent to sign said license, and that his refusal so to do was unlawful and illegal. The petition concluded with a prayer for a peremptory writ of mandamus.

The respondent filed his answer, setting forth the reasons why he refused to sign said license, at length. They were in effect as follows:

First. That the resolution of the city council, fixing the dram-shop license for the municipal year, commencing July 1, 1899, at $500, was void, for the reason that the city was without power or authority to determine the amount of the license by a resolution, but could legally fix the same only by an ordinance.

Second. That if the power to fix the license fee could be properly and legally exercised by resolution, then the mayor had a right under the law to veto such resolution; that he did veto the same, and it was not passed by the council over his veto, and therefore the resolution never became operative.

Third. That for several years prior to the time relator presented his license to the respondent for signature, there was in force an ordinance of the city fixing the license fee at the sum of $1,000 per annum, payable in advance; that such ordinance, being in force at the time of the passage of said resolution, could not be repealed by the resolution, and

that therefore relator was not entitled to a license by paying or offering to pay a less amount than $1,000.

Fourth.   That the dram-shop bond required by law of the relator under the fifth section of the dram-shop act was not at the time the petition was filed, and has not since been approved as required by said section.

Issues were joined and a jury waived.   The proofs having been heard, the court found for the respondent and denied the writ, at the costs of the relator.

There was no question as to the facts in this case.   It appeared from the proofs that the city of Joliet was organized under the general incorporation act, and that it has seven wards and fourteen aldermen.   By chapter 25 of the revised ordinances of 1884, the city council was authorized to grant a license to keep a dram-shop to any person applying therefor in writing, upon such person complying with certain requirements therein set forth, " and paying for such license for the use of said city at a rate that may be from time to time established per annum."   Under this ordinance the license fee was fixed by the council by resolution or motion up to the year 1889.   On June 27, 1889, an ordinance concerning dram-shop licenses known as No. 796 was passed, fixing the license fee at the sum of $1,000 per annum, payable in advance, and repealing all ordinances and parts of ordinances in conflict therewith.   In 1891 the ordinances of the city of Joliet were revised and an ordinance enacted for the adoption and publication of the same. Chapter 33 of the revised ordinances of 1891 was entitled " Intoxicating Liquors," and provided, among other things, for the granting of licenses to dram-shop keepers.   The provision in regard to the payment of a license fee was identical with that of the ordinances of 1884; that is, that the person desiring the license might obtain it by complying with certain other prerequisites, " and paying for such license for the use of said city at a rate that may be from time to time established per annum."   It was also provided by the revised ordinances of 1891 that " all ordinances of the city of Joliet heretofore passed in relation to the subject-matter of, or

inconsistent with any of the provisions of the following chapters mentioned in section No. 208 hereof (which included chapter 33 as to intoxicating liquors above mentioned), be and the same are hereby severally repealed." Acting upon the theory that the revised ordinances of 1891 repealed ordinance No. 796, and that the amount of the dram-shop license could be fixed by a resolution, the city council, at a regular meeting on June 26, 1899, by a vote of eight ayes to six nays, adopted a resolution or motion that " dram-shop license beginning July 1, 1899, be and is hereby fixed at $500, payable in advance."

The resolution fixing the amount of the license was vetoed by the mayor in a written message duly presented by him to the city council. No attempt was made to pass the resolution over the veto. In pursuance of said ordinance and resolution, the relator filed the bonds required; deposited the sum of $500 with the city treasury and presented his license to the respondent for signature, in the manner set forth in the petition. The respondent refused to sign the license for the reason, as given to him by the relator, that the amount of money named by it was not sufficient. He also wrote to the city clerk and the city treasurer notifying them " not to accept from any person or persons a license fee of $500 for each dram-shop, as fixed in said resolution."

The first question which arises upon this record and the one of greatest importance is whether the city of Joliet could lawfully fix the amount of the license fee by resolution, or only by an ordinance, duly enacted according to law.

By article 3 of the general incorporation act, which for convenience we may call the charter of the city, the yeas and nays must be entered of record upon the passage of all ordinances, and the concurrence of a majority of all the members elected is necessary to the passage of an ordinance. A quorum of the city council consists of a majority of the aldermen elected, and a quorum being present, a majority of those present can transact ordinary business and

pass resolutions, unless they create a liability against the city. An ordinance of the city of Joliet must therefore have at least eight votes in its favor in order to pass it, and the names of those voting for and against it must be entered of record, while a resolution can be passed by a majority of a quorum, and without the yeas and nays being taken or entered, unless specially demanded by a member. The mayor may veto an ordinance, and if he does so two-thirds of the members elected to the city council must agree by yeas and nays entered of record to pass it over the veto, or the ordinance fails to become a law. While, therefore, it requires eight votes to pass an ordinance of the city and ten votes to pass it over a veto, a majority of a quorum, or five members of the council, can pass a resolution and the mayor can not interfere with it. In order, no doubt, to prevent hasty, crude and unwise municipal legislation, the legislature, in giving to city councils certain law-making powers, surrounded the passage of ordinances with safeguards, and placed their enactment beyond the control of a bare majority of a quorum, or even of a majority of the aldermen elected, where the mayor disapproves. No such safe-guards are thrown around the passing of motions and resolutions. It can not be supposed that the legislature intended to leave the city council to determine at its own pleasure, in every case, whether it will act by ordinance and be subject to the checks and restrictions surrounding ordinances, or will act by resolution and be free from restraint. The inference to be drawn from a consideration of the act conferring the authority rather is that the legislature intended, as a general rule, that enactments of the city council should be by ordinance.

Article 5 of the charter confers upon the city council a variety of powers, a great majority of which must be exercised by means of ordinances. Those giving power to issue dram-shop licenses are the fourth subdivision of section 1, Art. 5, which is " to fix the amount, terms and manner of issuing and revoking licenses," and the 46th, which is " to license, regulate and prohibit the selling or giving away of

any intoxicating, malt, vinous, mixed or fermented liquor, the license not to extend beyond the municipal year in which it shall be granted, and to determine the amount to be paid for such license." The 96th subdivision grants the power " to pass all ordinances, rules, and make all regulations proper or necessary to carry into effect the powers granted to cities or villages, with such fines or penalties as the city council or board of trustees shall deem proper."

In C. & N. P. R. R. Co. v. City of Chicago, 174 Ill. 439, it was said that the words " ordinances, rules and regulations," as used in said paragraph 96, are identical in meaning. Said clause therefore, as so interpreted, may be considered as if it read, " The city council shall have power to pass all ordinances proper or necessary to carry into effect the powers granted to cities," etc. The charter in several places provides for such rules and regulations as the city council may, by ordinance, prescribe, and uses other like language implying that the rules, regulations and restrictions authorized by that instrument are to be prescribed by ordinance. In the case last above referred to, it was further said :

" A resolution or order is not a law, but merely the form in which the legislative body expresses an opinion. An ordinance prescribes a permanent rule of conduct or government, while a resolution is of a special and temporary character. Acts of legislation by a municipal corporation which are to have continuing force and effect, must be embodied in ordinances, while mere ministerial acts may be in the form of resolutions. It is true that where the charter of a municipality is silent as to the mode in which the city council shall perform an act, the decision of the council may be evidenced by either a resolution or an ordinance. But where the charter requires an act to be done by ordinance or where such a requirement is implied, as it is there, by necessary inference, a resolution is not sufficient, but an ordinance is necessary. * * * Acts of the city, which have for their object the carrying into effect of the charter powers thus granted, are legislative in their character; and it is well settled that acts of municipal corporations, which are legislative in their character, must be put in the form of ordinances and not of mere resolutions."

The People v. Mount.

We conclude, from the above authority, that if the act is legislative in its character and prescribes general rules, regulations, restrictions or penalties, applicable to the public generally, it can only be adopted by ordinance, while if it is ministerial, it may be accomplished by resolution.

In the case of The People v. Village of Crotty, 93 Ill. 180, it was said, in speaking of the licensing of dram-shops:

"This power to license, regulate and prohibit is a dormant one, and affords no authority to issue licenses until called into life and put in operation by appropriate legislation by the municipal authorities. Without the adoption of a general ordinance on the subject, authorizing the issuing of licenses, and specifying who shall issue them, the length of time they shall run, the amount to be paid by the applicant, the time and manner of payment, etc., the village authorities are powerless to issue license to any one."

It is clear that it is general legislation to enact that liquor licenses shall be granted to all who apply therefor, under certain conditions, and to prescribe those conditions. It is argued, however, that the ordinance in question answered all the requirements of the law, even to the providing for the payment of a license fee, which was to be "at a rate that may be from time to time established per annum;" that the mere fixing of the amount of the fee provided for by the ordinance was temporary and ministerial and could therefore be done by resolution.

There is no part of an ordinance for the granting of licenses for the sale of intoxicating liquors more important than that which provides for the payment of a license fee. Section 1 of the dram-shop act of 1883 provides that it shall not be lawful for the corporate authorities of any city to grant a license for the keeping of a dram-shop, except upon the payment in advance of such a sum as may be determined by the respective authorities of such city, not less than at the rate of $500 per annum.

The law in relation to the subject is wholly based upon the theory that a license fee should be paid for the sale of such liquors, and that matter is made the most prominent feature of the law. We can not say, therefore, that it was

the intention of the legislature to provide that all other
questions connected with the granting of licenses should be
provided for by ordinance, while the amount of the license
fee could be fixed by a mere resolution passed by a major-
ity of a quorum, with or without the consent of the mayor.
Such a construction of the law does not appear to us to be
reasonable.

We think that not only is it general legislation to deter-
mine that the sale of liquor shall be permitted and to pre-
scribe the conditions, but that it is equally an act of general
legislation to determine the fee which must be paid for the
privilege.    All these regulations apply in the same manner
to all the public, and any person who chooses is entitled to
engage in the business by complying with the terms pre-
scribed.

We therefore hold that the amount of the license fee in
question could not be fixed by a mere resolution, and that
the resolution passed by the council June 26, 1899, fixing
the license fee at the sum of $500 for the year commencing
July 1, 1899, was void and of no effect.    The resolution
being void the action of the mayor in vetoing it was im-
material and the effect of such veto need not be discussed.

The next question presented is, whether or not the ordi-
nance of June 27, 1889, known as ordinance No. 796, fixing
the license fee at $1,000, was still in force at the time appel-
lee refused to sign the license in question.    So far as this
case is concerned, it probably is not necessary to decide the
question, as in view of what we have above said, appellee
was justified in refusing to sign the license.    If ordinance
No. 796 was in force, he would not have been authorized in
signing the license for the reason that the sum proffered for
the same was not sufficient.    If that ordinance was not in
force, there was no ordinance whatever fixing the amount
of the license fee, and therefore no license could lawfully
be issued.    In view of the circumstances surrounding this
case, however, and as the question is presented for decision
by counsel on both sides, we deem it best to pass upon the
same at this time.

By section No. 208 of the revised ordinances of September 28, 1891, chapters 1 to 62, inclusive, were adopted and declared to be the ordinances of the city of Joliet. By section 209 it was provided that "all ordinances of the city of Joliet heretofore passed in relation to the subject-matter of or inconsistent with any of the provisions of the following chapters mentioned in section 208 hereof, be and the same are hereby severally repealed."

The question is whether ordinance No. 796 is "in relation to the subject-matter of or inconsistent with any of the provisions" of those chapters of the revised ordinances mentioned in section No. 208. The subject of chapter 33 of the revised ordinances of 1891 is "Intoxicating Liquors." It provides for issuing licenses to sell such liquors, prescribes the restrictions under which sales shall be made, the bond to be given, and provides that the dram-shop keeper shall pay for his license "at a rate that may be from time to time established per annum."

Ordinance No. 796 relates solely to the amount of the license fee to be paid, which it placed at $1,000. While they are both upon the general subject of liquor licenses, yet the particular subject of each is different from the other. The subject-matter of one is the granting of licenses and the conditions imposed upon those desiring to sell intoxicating liquors; the subject of the other is the rate to be paid by such parties for the privilege. The two are not inconsistent with each other, but both can stand and neither interferes with the operation of the other. From the time the revised ordinances were passed in 1891 until 1899, the city council annually, by motion or resolution, recognized $1,000 as the proper amount to be paid for the license fee. If ordinance No. 796 was not in force then all subsequent acts of the city in granting licenses were unlawful, while if it was in force such acts were wholly in accord with the law. We are inclined to that construction which finds that the council proceeded in accordance with the law, rather than to the contrary one.

In Town of Ottawa v. County of La Salle, 12 Ill. 339, it is said:

" It is a maxim in the construction of statutes that the law does not favor a repeal by implication. The earliest statute continues in force unless the two are clearly inconsistent with, and repugnant to each other, or unless in the latest statute some express notice is taken of the former, plainly indicating an intention to repeal it. And where two acts are seemingly repugnant, they should, if possible, be so construed that the latter may not operate as a repeal of the former by implication. So a subsequent statute which is general, does not abrogate a former statute which is particular."

In Covington v. East St. Louis, 78 Ill. 548, the doctrine was recognized, that "a general statute without negative words will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent." In Trausch v. The County of Cook, 147 Ill. 534, it is laid down as a well known principle that "repeal by implication is not favored, and if the two acts said to be inconsistent can be so construed that each may be enforced, such construction is to be adopted as will give effect to the legislative will as expressed in each act."

In the recent case of Village of Ridgway v. Gallatin County, 181 Ill. 521, where the question of the repeal of a prior special law by a subsequent general law was under consideration, the court said:

' Such a repeal is not favored in the law and a later statute will never be held to repeal an earlier one unless they can not be reconciled. It is the duty of the courts to construe them so as to avoid repeal if such a construction can be given, and a statute will never be held to be repealed by implication if it can be avoided by any reasonable hypothesis. It is also the rule that a subsequent law which is general does not abrogate or repeal a former one which is special and intended to operate upon a particular subject, and that if the later statute does not contain negative words it will not repeal the particular provisions of the special law on the same subject, unless it is impossible that both should be enforced."

The rules above laid down for the construction of laws of the State are equally applicable to the construction of ordinances. It is not only possible for both of the ordinances

in question to be enforced, but it is also true that unless they are enforced together, great confusion and inconvenience will ensue. Ordinance No. 796 is not repealed by title in the revised ordinances, and for the reasons above given it can not be held to be repealed by implication. It was therefore in force at the time appellant refused to sign the license in question.

It is unnecessary to consider the question whether the bond presented by appellant was approved as provided by law or not, as it was the duty of the mayor, for the reasons above given, to refuse to sign the license presented to him by appellant, regardless of the question of the approval of the bond.

The action of the court below in denying the peremptory writ of mandamus was in conformity with the law, and the judgment is accordingly affirmed.

Mr. Justice Dibell, having presided at the trial in the court below, took no part in the consideration of the cause in this court.