(No. 34960.—

THE CITY OF CHAMPAIGN, Appellant, *vs.* CITY OF CHAMPAIGN TOWNSHIP, Appellee.

*Opinion filed January 23, 1959—Rehearing denied March 18, 1959.*

60

SCHAEFER, HERSHEY, and DAVIS, JJ., dissenting.

JOHN L. FRANKLIN and PHILIP C. ZIMMERLY, both of Champaign, for appellant.

JOHN J. BRESEE, and JAMES L. CAPEL, both of Champaign, for appellee.

CHARLES M. O'BRIEN, of Chicago, for Illinois Hospital Association, *amicus curiae*.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

Leave to appeal has been granted in this cause to review a judgment of the Appellate Court which affirmed a finding by the circuit court of Champaign County that appellant, the city of Champaign, could not recover from appellee, City of Champaign Township, for hospital services furnished by a city-owned hospital to Robert Clay, a resident of the city whom the complaint describes as a "medically indigent person." (See: 17 Ill. App. 2d 449.) The boundaries of the city and township are coterminous, and at issue is the question of which governmental unit must bear the burden for such services. There is neither constitutional nor common-law obligation upon any governmental unit to support the poor and destitute. The whole matter of poor relief is, rather, statutory in origin, and the legislature, in the exercise of the police power, is free to impose the obligation for the support of the poor on

such of the political subdivisions of the State as it may choose. (*People ex rel. Heydenreich* v. *Lyons,* 374 Ill. 557; *County of Perry* v. *City of DuQuoin,* 99 Ill. 479; *Town of Fox* v. *Town of Kendall,* 97 Ill. 72.) Briefly, in the instant case, it is the theory of the township, adhered to by the courts below, that the obligation for the services in question has been imposed upon the city by virtue of section 44—6 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1955, chap. 24, par. 44—6.) The city, for its part, insists that the later enacted Public Assistance Code imposes liability on the township. We have permitted the Illinois Hospital Association to express its views in a brief filed as *amicus curiae.*

Factual background reveals that the city of Champaign owns and operates a public hospital, known as Burnham City Hospital, under authority granted by the legislature in article 44 of the Revised Cities and Villages Act. (See: Ill. Rev. Stat. 1955, chap. 24, pars. 44—1 through 44—14.) Article 44, which we shall hereinafter refer to as the hospital statute, is a special grant of power which admittedly circumscribes the rights, duties and powers of a city choosing to operate a public hospital. On December 11, 1956, Robert Clay was admitted to the hospital under emergency conditions and remained a patient until June 22, 1957, during which period he received hospital services totaling $4,019.80. At the time of admission Clay had been a resident of the city for twelve months. He was not eligible for or receiving assistance under any of the provisions of the Public Assistance Code, and the city's complaint alleges that he did not have sufficient money, property or other resources to meet the cost of the services rendered. After investigating the case the township paid certain doctor bills and a charge for ambulance, apparently conceding that the Public Assistance Code rendered it liable to that extent, but it has denied liability for the hospital services on the

ground that such obligation is imposed upon cities maintaining public hospitals by section 44—6 of the hospital statute.

Insofar as pertinent to this proceeding, section 44—6, which is titled: "Use of Hospital," provides as follows: "Every hospital established or purchased under this article shall be maintained for the benefit of the inhabitants of the city in which it is established who are sick, injured or maimed. *But every inhabitant of that city who is not a pauper shall pay to the hospital board, * * * reasonable compensation for occupancy, nursing, care, medicines, or attendance,* according to the rules and regulations prescribed by the board. * * * For the purposes of this section, a 'pauper' means any indigent person who has been a bona fide resident of the city for at least twelve months prior to the time of becoming a patient for treatment in the hospital." While this court has not heretofore been called upon to construe this section in a similar factual setting, it does appear that, during the long period of its existence, the section has been commonly interpreted to mean that the legislature thereby imposed upon cities operating public hospitals the obligation and duty of furnishing hospital services to persons qualifying as inhabitant paupers, and that no recovery could be had by the city from the governmental unit otherwise charged with providing general assistance to the poor and indigent. (See: Attorney General's Report and Opinions, 1927, p. 191; 1932, p. 534.) This was the result reached by the Appellate Court in the instant case, its reasoning being that since section 44—6 requires city hospitals to treat inhabitant paupers free of charge, there could be no recovery by the city from the township or any other governmental unit for hospital services rendered in discharge of the public duty imposed upon the city by the statute.

On this appeal the city of Champaign appears to agree that it has the statutory duty of furnishing hospital serv-

ices to its pauper inhabitants, but contends, first, that section 44—6 is not to be interpreted as exempting the township from ultimate liability for such services or, second, that the later enacted Public Assistance Code now imposes the obligation upon the township. In support of its first premise the city rationalizes that the hospital statute has nothing to do with poor relief, and that section 44—6, when read *in pari materia* with the Public Assistance Code, must be construed only as relieving inhabitant paupers from personal liability for hospital services, leaving the city free to be reimbursed therefor by the governmental unit charged with providing general assistance. The force of such argument is, of course, that the legislature did not intend by section 44—6 to relieve counties or townships of the obligation of providing hospital services to pauper inhabitants of a city maintaining a public hospital and, conversely, that while the duty for rendering the services was imposed upon the city, it was not intended that the city should bear the cost therefor. Such a construction is untenable when the evolution of the statutes involved is considered.

The city hospital statute, substantially in its present form, was a part of the Charities Act from 1891 through 1940, (See: Laws of 1891, p. 142, and Ill. Rev. Stat. 1939, chap. 23, pars. 165-176,) and did not become a part of the Cities and Villages Act until 1941 when that act and related statutes were the subject of an extensive revision. (See: Laws of 1941, vol. 2, pp. 225-229.) With specific reference to section 44—6, above quoted, the first two sentences, *viz.*, those which state that the hospital shall be maintained for the benefit of the inhabitants of the city and that every inhabitant who is not a pauper shall pay compensation, have been a part of the hospital statute since 1891. The concluding sentence, on the other hand, containing a definition of a pauper, was not added to the section until 1941 when the statute was incorporated into the

Cities and Villages Act. The addition of the definition to the statute cannot be said to have been made without some purpose and it is our opinion that the legislature thereby clarified its intention that cities maintaining public hospitals, rather than the governmental unit charged with general assistance to the poor and needy, were to bear the obligation of providing hospital services to pauper inhabitants of the city. In 1941, by virtue of section 15 of the Paupers Act, (Ill. Rev. Stat. 1941, chap. 107, par. 15.1,) the relief of poor and indigent persons "lawfully resident" was charged generally to townships in counties under township organization, and section 17 of the same act (par. 17) defined a "resident" as a person who had made his or her home in the township for a continuous period of six months. Had there been no intention, when section 44—6 was re-enacted to its present form, to impose upon cities maintaining public hospitals a separate obligation to provide hospital services to its pauper inhabitants, there would have been neither need nor purpose for a separate definition of a pauper and separate residence requirements to be added to the hospital statute. Additionally, we may consider that the legislature, when it re-enacted the former portions of section 44—6 in 1941, did so in face of the commonly accepted view that its language imposed on city hospitals an obligation of providing hospital services to inhabitant paupers, and relieved other governmental units of the same obligation. It is axiomatic that a re-enacted statute will be given the same construction as that given the prior act which it follows, since the legislature is presumed to know the construction the statute has been given and, by re-enactment, is assumed to have intended for the new statute to have the same effect. (*Lamere* v. *City of Chicago*, 391 Ill. 552; *Huntoon* v. *Pritchard*, 371 Ill. 36.) Here the legislature went a step further in 1941 when it provided a separate definition of a pauper to have application only under the hospital statute, thus carving out an exception

to the pauper laws otherwise applicable. In the face of such action it is manifest that the legislative intent embodied in section 44—6 was to impose upon cities maintaining a public hospital the obligation of providing hospital services to its pauper inhabitants and that such intent was not limited, as is here contended, to a purpose of providing only that such paupers would be relieved of personal liability for the services. Unless, as the city further urges, it can be said that the obligation for hospital service to such inhabitants has since been transferred to the township by the Public Assistance Code, liability for the hospital services rendered to Robert Clay clearly rests upon the city.

In 1949 the legislature repealed numerous laws relating to needy persons and public assistance, among them being the Paupers Act, (See: Laws of 1949, p. 441,) and enacted in their stead the Public Assistance Code of Illinois. (See: Laws of 1949, pp. 405-442.) By section 4—3 of the code, which is titled: "Governmental Units Responsible for General Assistance," it is provided in part: "In counties under township organization * * * the various towns * * * shall relieve and support all needy persons lawfully resident within their respective territories, and shall provide general assistance to the medically indigent persons therein entitled to such assistance as provided in section 4—14." (Ill. Rev. Stat. 1955, chap. 23, par. 439—3.) Section 4—6, read in conjunction with section 1—10, defines a lawful resident as a person who has made his or her home in such township for a continuous period of six months. Section 4—14, as constituted at the time of Clay's hospitalization, is entitled: "Assistance to the Medically Indigent," and states in part as follows: "When any person not otherwise eligible for or receiving general assistance under Article IV, or assistance under Articles V, VI, VII or VIIA of this Code, shall fall sick or die not having sufficient money, property, or other resources, in-

cluding income and earnings available to him over a twelve-month period, to meet the cost of necessary medical, dental, hospital, boarding or nursing care, or burial, the supervisor of general assistance charged with the duty of providing general assistance in the governmental unit in which such person may be at the time of his illness or death, shall give or cause to be given to him, such care as may be necessary and proper, including transportation, * * *." (Ill. Rev. Stat. 1955, chap. 23, par. 439—14.) Subsequent provisions of the section charge the county with the care of medically indigent residents of cities over 500,000 or incorporated towns which have superseded townships, and confer upon those counties a right to reimbursement from the Public Aid Commission for medical care given at county expense in a county hospital, in a county home for the infirm, or through an institution or service maintained by any municipal, county, State or national governmental body, with certain exceptions. Among other things, the section further permits expenses incurred by a governmental unit to be recovered from the person or his estate, and provides that all expenses chargeable under the section against any person or governmental unit may be recovered by appropriate action.

Although section 4—14 of the code appears in reality to be no more than an expanded re-enactment of section 24 of the Paupers Act of 1874, as amended, (See: Ill. Rev. Stat. 1947, chap. 107, par. 25,) which dealt with aid to a person not a pauper, the city of Champaign insists that the purpose of the new enactment was to impose absolute liability on the township for the care of medically indigent, of which Robert Clay was one, and that by such section the legislature "imposed a new liability for poor relief and thereby created a source or fund from which a municipal hospital could recover the loss which it had theretofore been required to bear by reason of the exemption from liability imposed by the former statute." Of necessity these

contentions are not based upon express language of the code relating to services rendered by city-owned hospitals, but upon inference, implication and rationalization. It is not contended that section 4—14, or any other provision of the code, repeals or modifies section 44—6 of the hospital statute, either expressly or by implication, insofar as it deals with the obligation of providing hospital services to pauper inhabitants of the city. The city urges, rather, that no repugnancy will exist between the statute and the code, and that both may be read together and given effect, if we will treat section 44—6 only as relieving paupers of personal liability for hospital services and not as imposing the obligation for such services on the city. As previously pointed out, however, the construction contended for is contrary to the intent manifested by the legislature when section 44—6 was enacted in its present form in 1941. We cannot, as the city would have us do, recast that intent in the light of the Public Assistance Code which was not legislated into existence until eight years later. The fact remains that the legislature, by section 44—6 of the hospital statute, imposed upon cities maintaining public hospitals the obligation of providing hospital services to its pauper inhabitants, and said nothing in the code to relieve such cities from that obligation.

The *amicus curiae,* which agrees with the city that the Public Assistance Code imposes absolute liability on the township for Clay's hospital services, suggests that the code purports to deal with all laws relating to paupers and states that the hospital statute, insofar as it deals with paupers, must be read *in pari materia* with the code, and that all provisions of the hospital statute repugnant to the code must be resolved by the latter as being the later enacted law dealing with the subject of paupers. While such contention propounds a familiar principle of statutory construction applicable to general statutes which appear in conflict, there is yet another rule of construction that where

two statutes treat upon the same subject, the earlier being special and the later one general, unless they are irreconcilably inconsistent, the latest in date will not be held to have repealed the former, but the special act will prevail in its application to the subject matter coming within its particular provision. (*Rosehill Cemetery Co.* v. *Lueder,* 406 Ill. 458, 466-467; *Village of Ridgway* v. *Gallatin County,* 181 Ill. 521, 526.). Here, many years before the Public Assistance Code was enacted, the legislature treated specially upon the matter of hospital services for pauper inhabitants of a city maintaining a public hospital, and nothing in the later enacted general law directly provides to the contrary.

Moreover, in the instant case, we see no irreconcilable inconsistency between a statute which, as a condition of an optional power granted to certain cities, provides specially that a city electing to operate a public hospital shall operate it for the benefit of its pauper inhabitants without compensation, and a later enacted code which, in general terms, charges a township in which a medically indigent person "shall be at the time of his illness or death" with the responsibility of providing "such care as may be necessary and proper." The claims here presented to the contrary are based on the premise that the code is an all-inclusive enactment on the subject of assistance to the needy and, in particular, that section 4—14 imposes a blanket liability on the township for all the relief and care that may be rendered to medically indigent persons. Section 8—14 of the code, a general provision, provides that recipients under certain articles of the code shall not "at the same time receive any other public assistance from the State or from any political subdivision thereof or from any municipal corporation therein," and thus appears to give recognition to sources of assistance other than those provided for in the code. (See: Ill. Rev. Stat. 1955, chap. 23, par. 443—14.) Similarly it is to be seen that section 4—14 does not pur-

port to be all inclusive. It expressly exempts from township responsibility those persons who are eligible for or receiving assistance under other articles of the code and provides that "eligibility" for care as a medical indigent shall be determined in accordance with rules and regulations promulgated by the Public Aid Commission. We conclude, therefore, that the Public Assistance Code is not to be construed as relieving the city of the obligation imposed upon it by section 44—6 of the hospital statute to furnish hospital services to its inhabitant paupers without compensation.

Throughout the briefs filed in this court the city and *amicus curiae* have stated that the imposition of the obligation on city hospitals results in numerous hardships and inequities both on the city and its taxpayers, and have urged that we should adopt a construction to avoid them. It is the function of this court, however, to construe statutes in accordance with the normal import of the words used, whatever its opinion may be regarding the desirability of the results produced by their operation. (*People ex rel. Carruthers* v. *Cooper*, 404 Ill. 395; *Belfield* v. *Coop*, 8 Ill.2d 293.) If the hardships complained of in the instant case do, or will in fact occur, the matter of relief rests with the legislature which, as previously stated, is free to impose the obligation of poor relief upon such of the political subdivisions of the State as it may choose.

We have been told on oral argument that Robert Clay has a cause of action to recover damages for the injury which led to his hospitalization and it is the city's interpretation of the Appellate Court's opinion that the hospital can have no charge on any claim, demand or cause of action accruing to Robert Clay. If the opinion is subject to such an interpretation, it is in error. Whatever construction might be placed upon the precise language of section 44—6 itself, public policy, now enacted into law by the Public Assistance Code, has always recognized that

expenses incurred by a governmental unit for the care of the sick, poor and needy may be recovered from the recipient or his estate where the circumstances warrant, and to this end it is now provided that governmental units have a charge on all claims, demands and causes of action for injuries to a recipient of medical assistance from the time of injury to the date of recovery on such claim, demand or cause of action. (See: Ill. Rev. Stat. 1957, chap. 23, pars. 414, 414.1.) Persuasive authority is found in *Tazewell County* v. *Cooney,* 215 Ill. App. 617. There a person who became an inmate of a county farm in 1878 as a pauper, and who lived there until his death in 1917, commenced receiving a pension in February, 1913, and from such source had accumulated approximately $1,338 at the time of his death. Based upon the case of *Dandurand* v. *County of Kankakee,* 196 Ill. 537, the court held that the pauper was impliedly liable for the board, care and medical attention furnished him and permitted the county to recover from the proceeds of the after-acquired pension. The principles expressed in those cases, particularly in view of the subsequent expressions of our legislature, have application to the case at bar.

For the reasons stated the judgment of the Appellate Court for the Third District is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

The net of the opinion is that because the taxpayers of a city have undertaken the financial burden of building and maintaining a municipal hospital, they must also bear the additional burden of providing free hospital care for those medically indigent residents of the township who are also residents of the city. Responsibility for the care of medically indigent residents of cities that do not maintain hospitals is upon the township. I can not believe that the legislature intended this result.

The opinion reaches its curious conclusion because section 44—6 of the Revised Cities and Villages Act says that when a city maintains a hospital, "every inhabitant of that city who is not a pauper" shall pay for the care that he receives. (Ill. Rev. Stat. 1957, chap. 24, par. 44—6.) No one is here attempting to charge Clay, the injured man, for the hospital care that he received. Section 44—6 does not purport to deal at all with the question in this case, which is what governmental unit is to bear the cost of the hospital care that was furnished to Clay.

Section 4—14 of the Public Assistance Code deals with the matter of financial responsibility for care furnished to "medically indigent persons." With exceptions not relevant here, it places the burden of furnishing them "medical, dental, hospital, boarding or nursing care, or burial" upon the township. (Ill. Rev. Stat. 1955, chap. 23, pars. 439—14, 439—9.) It is not disputed that Clay falls within the statutory definition of a medically indigent person.

I see no repugnancy between the provision that says that a pauper shall not be charged by a city hospital for the care that he receives, and the provision that places the financial burden of furnishing that care upon the township. Both provisions can exist together.

But even if there can somehow be distilled from section 44—6 of the Revised Cities and Villages Act anything that is repugnant to the allocation of financial responsibility contained in the Public Assistance Code, the conclusion that the opinion reaches is still unwarranted. The title of the Public Assistance Code of 1949 states that it is an act "to revise the public assistance laws of Illinois, to consolidate and codify such laws, to prescribe the functions, powers, and duties of governmental units, agencies and persons thereunder, * * *." It is axiomatic that a comprehensive legislative revision is, "in effect, a legislative declaration that whatever is embraced in the new statute shall prevail and that whatever is excluded shall be dis-

carded." (*Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 Ill. 425, 430-2; *Northern Trust Co.* v. *Chicago Railways Co.* 318 Ill. 402; *City of Fairfield* v. *Pappas,* 362 Ill. 80, 84; *People* v. *Horwitz,* 362 Ill. 289, 291.) To the extent that there may be repugnancy between the Public Assistance Code of 1949 and section 44—6 of the Revised Cities and Villages Act, the latter section has been repealed by implication. *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 Ill. 425.

HERSHEY and DAVIS, JJ., join in this dissent.