JAMES D. PETERSON *et al.*, Plaintiffs-Appellants, *v.* TAZEWELL COUNTY *et al.*, Defendants-Appellees.

Third District   No. 75-285

Opinion filed May 31, 1976.—Rehearing denied July 21, 1976.

Moehle, Reardon, Smith & Day, of Washington, for appellants.

C. Brett Bode, State's Attorney, of Pekin (Thomas Leiter, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

The issue here was previously presented in *Peterson v. Tazewell County*, 29 Ill. App. 3d 915, 330 N.E.2d 888 (3d Dist. 1975), which we dismissed for want of appellate jurisdiction. Subsequently the circuit court dismissed plaintiffs' second amended complaint with prejudice. The previous record was then supplemented with that final order and a new notice of appeal and has been refiled with appellate jurisdiction perfected.

The question raised is whether plaintiffs, as taxpayers, are entitled under their pleadings to a decree enjoining defendants from making disbursements from the county general fund to the county nursing home fund to cover an operating deficit of its nursing facility. The deficit is alleged to derive from the fact that the county fails to charge "private paying patients" (*i.e.*, those having private means to pay for their needs) the "full cost" of providing them room, board, care and treatment. For purpose of this appeal, we accept that allegation of fact as true. Plaintiffs then conclude that this "undercharging" constitutes an unlawful subsidy

violative of section 24 of "An Act * * * in relation to counties" the Counties Act) and sections 8, 9 and 13 of the County Home Act (Ill. Rev. Stat. 1975, ch. 34, pars. 303(7), 5368, 5369 and 5373), and that because the deficit has this origin, permitting the contemplated transfer of funds would allow the use of public money for private purposes, contrary to section 1(a) of Article VIII of the 1970 Illinois Constitution, and would also constitute "a taking of property" without due process of law, contrary to section 2 of Article I of the 1970 Constitution. We find these contentions untenable.

■■ ■ "[T]here is no such thing as a property right vested in the citizens of the State against the imposition of taxes for the public good." (*People v. Cain*, 410 Ill. 39, 48, 101 N.E.2d 74 at p. 79 (1951).) "The determination of what is for the public good and what are public purposes are questions decided in the first instance by the legislature which is vested with broad discretion in its determination. * * * The final determination of whether a [legislatively declared] use or purpose is within the limits of the legislative discretion [as circumscribed by the constitution] is a judicial function * * *." (*Poole v. City of Kankakee*, 406 Ill. 521, 526, 94 N.E.2d 416, 419 (1950).) The courts have accepted legislative delegations of taxing powers to construct and maintain public hospitals serving the health needs of the greatest number of citizenry possible as a proper governmental function, and the fact that a fee may be authorized to be charged for the use of such publicly tax supported facility does not make that paid use a prohibited private benefit. (*People v. Cain*) In our view of *Cain*, even if the fee charged is less than the full value of the services provided, that fact does not constitute a prohibited private benefit.

Plaintiffs misconstrue the statutes upon which they rely, and misdefine the perimeters of legislative delegations of power granted to county boards. The enabling legislation by which the boards are authorized to use the taxing power to construct and operate a county nursing home is found in section 24 of the Counties Act (Ill. Rev. Stat. 1975, ch. 34, par. 303(7)). The public purpose of this delegation of power under the express language of the same section of the Act is related solely to the care "of such sick * * * or infirm persons *as may by law be proper charges upon the county, or upon other governmental units*." (Emphasis added.) The same statute provides that for the care of *these persons*, the boards may establish rates "in accordance with * * * [the patient's] * * * ability to meet such charges, either personally or through a hospital plan or hospital insurance, and the rates to be paid by governmental units, including the State * * *." (As to identifying the persons who are "by law * * * proper charges upon the county or upon other governmental units," see Ill. Rev. Stat. 1975, ch. 23, pars. 7—1 and 7—1.1, 3—2, 4—4, 5—1, 5—2,

5—4, 5—7, 6—1, and 6—1.3, which are applicable sections of the Public Aid Code. *Cf.* also *City of Champaign v. City of Champaign Township,* 16 Ill. 2d 58, 156 N.E.2d 543 (1959).) It may be conceded that these categories of persons do *not* include any who by private means is fully able to purchase his own essential needs.

While the Illinois Department of Public Aid, in respect to patients admitted to a county home, is authorized in addition to paying the county rates, to study also "the amortization and construction costs" of such county facility (Ill. Rev. Stat. 1975, ch. 23, par. 5—7), the total absence of any comparable language in the enactments pertaining to the county homes makes it plain that county boards are *not* legislatively mandated to provide for amortization of designated costs in establishing their rates. The accuracy of this conclusion as to legislative intent is supported also by the provisions of the Counties Act (Ill. Rev. Stat. 1975, ch. 34, par. 303(8)), wherein county boards are empcwered for the purpose of promoting public health to contribute "such sums of money toward erecting, building, maintaining and supporting *any* non-sectarian *public hospital* located *within its limits* [irrespective of whether care is furnished the needy or the public generally] as the board[s] of the count[ies] *shall deem proper.*" (Emphasis added.)

Wherever a county board has acted pursuant to section 24 of the Counties Act (Ill. Rev. Stat. 1975, ch. 34, par. 303(7)) to construct and maintain a county health facility for the care of those infirm persons "as may by law be proper charges upon the county or upon other governmental units," and has fixed rates therefor, additional administrative powers in respect to that facility are then specifically conferred under the County Home Act (Ill. Rev. Stat. 1975, ch. 34, par. 5361 *et seq.*). These include the specific power "to control the admission and discharge of patients in the home" (ch. 34, par. 5362(5)), but only within the legislative priorities established in sections 8 and 9 of that act (ch. 34, pars. 5368, 5369). These provide that any infirm resident of the county who is *unable* to purchase care **shall** *be admitted* upon the order of the Supervisor of General Assistance ch. 34, par. 5369). The use of the word "shall" indicates a mandated priority. Section 8, however, provides that any infirm or ill resident of the county who is able by private means to purchase his own essential needs, and who desires to purchase care in the county home *with his own funds,* **may** be received and cared for at the home. The use of the word "may" indicates a discretionary power and a subordinated priority. And while the county boards, under section 24 of the Counties Act (Ill. Rev. Stat. 1975, ch. 34, par 303(7)) are given power to fix rates, that power is specifically circumscribed under the County Home Act (Ill. Rev. Stat. 1975, ch. 34, par. 5362(6)), which provides that these rates so established "*shall be uniform for all persons or agencies*

purchasing care in the home." (Emphasis added.) Thus, while the primary objective of the County Home Act is to provide health care to persons designated as governmental charges, and while such persons have a mandated priority for admittance, the legislature also perceived that the admittance of private paying patients under the same uniform rates, but with subordinated priority, would also promote the public good.

■■ Where a county home has vacant and unproductive facilities, the admittance of private paying patients under the uniform rates could contribute an economic benefit to the operation of the public facility by helping to defray certain fixed costs. Thus even if this legislative provision is arguably perceived as providing a health care "subsidy" to persons able by private means to purchase their own medical needs, it is not violative of any constitutional limitation on legislative powers where that "subsidy" derives from taxes assessed against members of the general public. The courts have accepted legislative delegations of taxing power to promote the public health of the greatest number possible (and not merely of those who are public charges) as a proper governmental function, (*People v. Cain.*) Plaintiffs err in interpreting sections 8, 9 and 13 of the County Home Act (Ill. Rev. Stat. 1975, ch. 34, pars. 5368, 5369 and 5373) as precluding the county board from providing service to private paying patients at the established uniform rate.

■■ In *People v. Cain,* the court upheld the validity of "An Act providing for the creating and operation of Hospital Districts" (Ill. Rev. Stat. 1975, ch. 23, par. 1251 *et seq.*), which was challenged on grounds similar to those raised here. That act provides for the establishment of hospital districts for in-patient and out-patient medical, or surgical care "for use by the public including paupers" (Ill. Rev. Stat. 1975, ch. 23, par. 1253(b)) and gives the districts taxing powers for the cost of operating and maintaining a hospital for the benefit of all inhabitants of the district who are sick or injured. The board of directors of the districts are empowered to make rules for the use of the hospital for "the greatest benefit to the greatest number" (Ill. Rev. Stat. 1975, ch. 23, par. 1265(7)) and to fix, charge and collect "reasonable fees" (ch. 23, par. 1265(4)) for services furnished. If any such district shall be coterminous with or include within its corporate limits, even in part, any preexisting public agency authorized to levy taxes for operation and maintenance of a public hospital (*e.g.,* facilities operated by county boards under the County Home Act), the latter are required to cease exercising powers in respect to any hospital facility in the district. (Ill. Rev. Stat. 1975, ch. 23, par. 1273.) The objective of delegating legislative taxing power to provide health services to the greatest number of persons possible was held to be a legitimate public purpose, and the fact that "reasonable fees" could be charged did not convert the public character of the facility to

one engaged in private uses. Indeed, it is exactly this kind of facility for which the county board, under section 24 of the Counties Act (Ill. Rev. Stat. 1975, ch. 34, par. 303(8)), is authorized to make contributions of "such sums of money" as it "shall deem proper."

Plaintiffs' pleading states no cause for issuance of an injunction.

The judgment of the circuit court was correct and is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.