HERMAN STRAUSS

*v.*

THE CITY OF GALESBURG.

*Opinion filed June 16, 1903.*

1. DRAM-SHOPS—*a city has power to define territory for dram-shops.*
A city has authority, under its general power to regulate the sale
of intoxicating liquor, to define the territory within which such
business shall be conducted.

2. SAME—*power of city to authorize sale of liquor in any quantity.* By
defining a dram-shop to be "a place where spirituous or vinous or
malt liquors are retailed by less quantity than one gallon," the
Dram-shop act does not impliedly prohibit a city from granting a
license to keep a dram-shop for the sale of liquor in any quantity.

3. SAME—*right of city to classify wholesale and retail liquor business.*
An ordinance requiring parties selling liquor in quantities over
one gallon, not to be drank upon the premises, to pay $500 license
fee, and parties keeping dram-shops in which liquor in any quan-
tity may be sold to pay $1000 license fee, is not invalid for unjust
discrimination. (*Cairo v. Feuchter*, 159 Ill. 155, and *Monmouth v. Popel*,
183 id. 634, distinguished.)

*Strauss v. City of Galesburg*, 89 Ill. App. 504, affirmed.

APPEAL from the Appellate Court for the Second Dis-
trict;—heard in that court on appeal from the Circuit
Court of Knox county; the Hon. GEORGE W. THOMPSON,
Judge, presiding.

Appellant and two other persons, by separate suits,
sued the city of Galesburg, in the circuit court of Knox
county, in an action of assumpsit, filing the common
counts only, and laying the damages in each case in the
sum of $364.40. The general issue was filed, and a stipu-
lation was then entered into by all the plaintiffs in the
several suits with the city that the suits should be con-
solidated and tried as one.

The several demands sought to be recovered by the
suits were for wholesale liquor licenses paid by the re-
spective plaintiffs to the city under an ordinance of the

city requiring license for that business.  By stipulation
the ordinance of the city relating to the sale of liquors
was set out, and it was agreed that the sole question to
be determined in the consolidated suit was the validity
of the ordinance.  The portions of the ordinance thus set
out that have any application to the questions that will
be considered here were sections 1, 2, 9, 17 and 20 of an
ordinance entitled "Dram-shops," chapter 30 of the Re-
vised Ordinances of the city of Galesburg.  Sections 1
and 2 of said ordinances provided as follows:

"Sec. 1.  The sale, offering for sale or giving away of
any intoxicating, malt, vinous, mixed or fermented liquor
in any quantity, at any time, within this city, by any per-
son, firm, corporation or association, either as principal,
agent, clerk or servant, directly or indirectly, without
having first obtained a license therefor from this city,
is hereby prohibited.  Such licenses shall be classified
as, first, licenses to wholesale dealers, which shall only
permit the sale, offer to sell or giving away of such liquors
in quantities of one gallon or more, not to be drank upon
the premises, or in or upon any adjacent room, building,
yard, premises or place of public resort, the location
of such wholesale establishment to be specified in such
license, and not to be within any district where the sale
of liquor or establishment for carrying on of any bot-
tling works is prohibited by ordinance; second, licenses
to keep a dram-shop, which shall permit the keeping of
a dram-shop and the sale of said liquors in any quantity
thereat, subject to the provisions of this ordinance and
all ordinances of this city in regard to dram-shops and
the sale, offering for sale or giving away of such liquors.
Whosoever, not having a license as a wholesale dealer or
to keep a dram-shop, shall, by himself or another, either
as principal, agent, clerk or servant, directly or indi-
rectly, sell, offer for sale or give away any intoxicating,
malt, vinous, mixed or fermented liquor in quantity of one
gallon or more in violation of this ordinance, or whoever,

having such license, shall sell such liquor contrary to the condition of such license, shall be subject to a penalty of not less than $50 for each offense. Whosoever, not having a license to keep a dram-shop, shall, by himself or another, either as principal, agent, clerk or servant, directly or indirectly, sell any intoxicating, malt, vinous, mixed or fermented liquor in less quantity than one gallon, (or in any quantity to be drank upon the premises, or in or upon any adjacent room, building, yard, premises or place of public resort,) or whoever, having such license, shall sell any such liquor contrary to the condition of such license, shall be subject to a penalty of not less than $50 for each and every offense.

"Sec. 2. Before such license shall issue, application shall be made to the city council in writing, stating particularly the time for which such license is desired and the place where it is intended to locate the dram-shop for which said license is sought, designating the room where said dram-shop is to be located. Such application shall be accompanied by a bond in the penal sum of $3000, payable to the People of the State of Illinois, with at least two good and sufficient sureties, freeholders of the county of Knox, to be approved by the city council, and conditioned that such applicant will pay to all persons all damages that they sustain, either in person or property or means of support, by reason of the person so obtaining a license, selling or giving away intoxicating liquors. A license to keep a dram-shop at the time and place named in the application may issue to the applicant, if ordered by the council, at a meeting of the council held at least six days after the presentation to the council of such application and accompanying bond."

Section 9 provides, in substance, that no person shall be permitted to occupy more than one room in carrying on his business under a dram-shop license, and no room thus used shall be connected with any other room, except a room upon the same floor owned or controlled by

him, in which room no intoxicating liquors shall be sold, delivered or drank, and no obstruction shall be allowed to prevent a full view of either room from the public street, by sign, screen or otherwise, but that the room where the liquors are sold, and any connecting room therewith, shall be plainly visible, by day and by night, from the public street and accessible at all times to the police; nor shall a room or connecting room where such liquors are sold be connected with any other room, hall, passageway or closet by means of any opening, window, door, stairway, dumb-waiter, tube or wire, or in any manner whatever. Section 17 defines and prescribes certain territory within which no license to keep a dram-shop shall be issued. Section 20 is as follows:

"Sec. 20. Licenses to wholesale dealers to sell in quantities of one gallon or more, as specified in section 1 of this ordinance, shall be issued only upon application to the city council in writing, stating the time for which said license is desired, the place where it is intended to locate such wholesale business, (which application shall be subject to the approval of the council,) and the payment in advance into the city treasury of the sum of five hundred dollars ($500) per annum where the license is issued for one year and a proportionate sum where the license is issued for a shorter time, but such license shall not be issued for a shorter time than from the date thereof to the first day of May of the municipal year in which they are issued, and shall terminate on such first day of May."

Under the stipulation it was agreed that appellant and the other plaintiffs in the several suits had paid to the city of Galesburg the amount demanded for wholesale licenses, under protest; that the case should be tried before the court without a jury, and that if the court found the ordinance valid, judgment should be entered for the defendant city and against the plaintiffs for costs, and if the ordinance should be held invalid, judgment should

be entered in favor of plaintiffs for the several amounts demanded. A hearing was had in the circuit court, when the ordinance was held to be valid and judgment rendered in favor of the city for costs. The consolidated cause was appealed in the name of Herman Strauss against the city of Galesburg to the Appellate Court, where the judgment of the circuit court was affirmed, and a certificate of importance was granted and the cause brought to this court.

C. C. CRAIG, for appellant:

A dram-shop is a place where spirituous or vinous or malt liquors are retailed in less quantities than one gallon. Rev. Stat. chap. 43, sec. 1.

Ordinances must be general in their character and operate equally on all persons within the municipality of the class to which they relate. *Chicago* v. *Rumpff*, 45 Ill. 90; *Zanone* v. *Mound City*, 103 id. 552.

An ordinance licensing the sale of intoxicating liquors should be general and uniform, and operate in the same way upon all classes of persons coming within its provisions. *Village of Crotty* v. *People*, 3 Ill. App. 465; 93 Ill. 180.

An ordinance making an improper discrimination between different persons or corporations similarly situated, there being nothing, in the nature of things, which requires it, is unreasonable and will not be enforced. *Cemetery Ass.* v. *Railroad Co.* 121 Ill. 199.

Cities are not the absolute judges of the reasonableness of ordinances. All ordinances are subject to the limitation that they must be reasonable. *Lake View* v. *Tate*, 130 Ill. 247; *St. Louis* v. *Webber*, 44 Mo. 547; *Peoria* v. *Guggenheim*, 61 Ill. App. 347; *Buffalo* v. *Webster*, 10 Wend. 100; *St. Paul* v. *Saidler*, 2 Minn. 190; Reece on Ultra Vires, sec. 176.

A municipality may license to sell in less quantity than one gallon and prohibit sales in greater amounts, or it may permit sales in greater amounts than one gal-

lon and prohibit sales in lesser amounts. It may license either by separate licenses, but it cannot combine the business of dram selling with that of wholesaleing.

A. J. BOUTELLE, and FLETCHER CARNEY, for appellee:

A city has the right to classify liquor dealers. *Timm v. Harrison*, 109 Ill. 593; *Dennehy v. Chicago*, 120 id. 627; *Cairo v. Feuchter*, 159 id. 160.

This classification may be as to quantity, kind or purpose of sale, or both. *Dennehy v. Chicago*, 120 Ill. 627.

Mr. JUSTICE RICKS delivered the opinion of the court:

Using the language of appellant, the two main reasons urged against the validity of the ordinance are: "(1) By imposing a license fee on wholesale liquor dealers and none on dram-shops (other than what they paid before) it discriminates in favor of the dram-shop keeper and against the wholesaler; (2) municipalities have no power to cover, by license, dram-shop keeping and wholesaleing, or any two or more licensed callings."

The city of Galesburg is organized under the general laws of the State and its charter powers are defined by the City and Village act. By that act express power is conferred upon the city to license, regulate and prohibit the sale or giving away of intoxicating liquors, etc., and by the same section conferring the power the limitation upon that power is fixed by a proviso that "in granting licenses such corporate authorities shall comply with whatever general law of the State may be in force relative to the granting of licenses." (Hurd's Stat. 1899, chap. 24, art. 5, sec. 1, par. 46, p. 276.) The only general law of the State relative to the granting of licenses for the sale of liquors is the Dram-shop act, there being no general law applicable to or controlling the regulation of the sale of liquors at wholesale, and whatever authority cities and villages have with reference to that class of business is found under the organic law of such muni-

cipalities and contained in paragraph 46, *supra,* under authority to license, regulate and prohibit the selling or giving away of intoxicating liquors. It is not urged that appellee did not have authority to regulate the sale of liquors at wholesale and impose a license fee upon such business. Appellant concedes to appellee that authority, but, among other things, urges, that appellee had no authority to restrict the sale, by license, to any given locality, or, in other words, to restrict the sale as to locality within the corporate limits. That contention need not be further noticed than to call attention to the fact that the same question has been fully considered by this court in previous cases, and it has been held that municipalities have authority, under their power to regulate, to define the territory within which the business may be conducted. *Schwuchow* v. *City of Chicago,* 68 Ill. 444; *People* v. *Cregier,* 138 id. 401.

The validity of the ordinance in question, by the provisions of which the dram-shop keeper or the holder of a dram-shop license shall be permitted to keep a dram-shop and sell liquor in any quantity thereat, is challenged upon the ground that it is in conflict with the Dram-shop act, and particularly section 1 thereof, which defines a dram-shop as "a place where spirituous or vinous or malt liquors are retailed by less quantity than one gallon." As we understand the argument, it is that the statute having defined a dram-shop and having enacted certain laws relative to it as regulating the dram-shop business, as found in chapter 43 of Hurd's Statutes of 1899, that statutory definition is exclusive, and that no authority or power could be conferred by ordinance upon the holder of a license to keep a dram-shop to sell liquor in any quantity other than the quantities specified by the definition, namely, by less quantity than one gallon.

In giving a construction to a statute for the purpose of arriving at an interpretation of its meaning, all its

provisions and the object to be attained by it are to be considered. The Dram-shop act does not purport to in any manner deal with the subject of the sale of liquors at wholesale or their sale for any other purpose than to be drunk, but relates solely to the keepers of places it denominates dram-shops, and which are commonly known as tippling houses, where liquors are sold in small quantities for immediate use upon the premises, and that use being no other than the drinking of the liquor at the time and place of purchase. The law is only attempting to provide against and in some degree mitigate the evils of intoxication. It could matter little how much liquor might be in any house or what name the business bore, if the sales were to be drank upon the premises where sold the character of the business would be that of a dram-shop; and though one might hold a license to keep a dram-shop, if in fact he sold no liquor in less quantities than one gallon, and sold no liquor to be drank upon the premises or premises adjacent thereto, his business would, in fact, be a wholesale business. The Dram-shop act was aimed at an evil, and the definition given in the act was broad enough to cover the provision of the statute aimed at that evil; but there is nothing in the act itself, or any of its provisions, from which the inference can arise that the legislature by the definition intended to restrict municipalities in their classification of the liquor business for the purpose of regulation and license. The drinking of liquors is not their only use; in fact it is but a small portion of their use, taking the total consumption into consideration. Their consumption in the mechanical, medical and other branches of business is highly beneficial to society, but because of the injury to society by the single use of drinking, the State, under the police power, finds authority to regulate the business even to the extent of exclusion or prohibition, and in making such regulations the character of the business is the thing that is controlling, and not the name under

203—16

which it may be conducted. (*Dennehy* v. *City of Chicago*, 120 Ill. 627.)

The ordinance in question classifies the traffic in liquors by a division into two branches or classes, as dram-shop keepers and wholesale dealers; but it specifically states what, under the ordinance, a dram-shop keeper is, and defines him as a man who sells liquor in any quantity at a dram-shop, and specifically defines the wholesale dealer as one who sells in quantities of a gallon or more, not to be drank upon the premises, or in any adjacent room, yard, premises or place of public resort. The two businesses are confined to the same territory. The dram-shop keeper who sells in any quantity pays an annual license of $1000 and the wholesale dealer pays an annual license of $500. In referring to the general act in relation to dram-shops it is said to be a limitation upon the powers of the city. We find the provision that a dram-shop license shall not be placed at a sum less than $500 per annum. It cannot be said, then, of the ordinance in question, that it is in conflict with the statute because it fixes the license at a sum below the minimum there authorized. Whilst the authority of such municipalities to combine under one license the business of a dram-shop, as defined by the statute, and the business of wholesaleing, is challenged by appellant, no authority so holding is adduced. There is nothing in the general law inhibiting the combination of such sales, and unless by so doing it can be said that an unjust discrimination is created we can see no reason for denying the authority.

The principal argument of appellant is addressed to the proposition that the ordinance in question unjustly discriminates against classes of persons who are engaged in or may engage in the same business, and in formulating the objection the appellant says that it is unjust discrimination to allow the dram-shop keeper to sell at wholesale and retail and pay no more license than he

paid before, and to require the wholesale dealer to pay $500 per annum. Unless some former ordinance of the city could be said to be a limitation upon its power to pass the ordinance in question, we are unable to see what application the provisions of the former ordinance, by which the dram-shop keeper was to pay $1000 annually, could have to the question now before us. It is not, and certainly will not be, contended by appellant that though the city may have seen fit to license dram-shops at $1000 per annum and required no license of wholesale dealers, it was not also within its power to pass another ordinance absolutely prohibiting the sale, either at wholesale or at retail; and the ordinance in question is to be tested, not by the provisions of former ordinances, but by its own provisions. Under the power to regulate and license the business the classification was made. It can hardly be said there were natural lines upon which the business should be classified. Unless some law was contravened it was within the discretion of the city authorities to so classify as best to attain the end the city had in view, which was the regulation of the business. The two classes were named and authorized to engage in the business under the provisions and restrictions of the ordinance, and all other persons were prohibited from engaging in it at all. All persons desiring to engage in the business could alike select which of the two classes they preferred. They could sell at wholesale only and pay $500, or they could sell in any quantity and to be drank on or off the premises and pay $1000 license. By the ordinance the minimum license required by statute was imposed on the dram-shop keeper, and at the same time he was required to pay as much in addition thereto as did the man who sold only at wholesale. The classification was necessarily arbitrary, as there were no natural laws of classification; but such arbitrary classification did not invalidate the ordinance, unless the fact that it was arbitrary made the ordinance itself unreasonable or

contravened the organic law of such municipalities or the general law applicable to the business. The sale of liquor in all its forms and in any quantity was the genus and the sale in all its forms in restricted quantities was a species thereof, and when it is said that the wholesale and retail businesses are entirely distinct, it must be kept in mind that they are distinct not because they do not belong to the same general class, but because the general legislative authority has seen fit to impose no restrictions upon the dealer who handles liquor at wholesale and has imposed restrictions upon the keeper of a dram-shop. But when the city, under the power delegated to it to regulate the liquor traffic, which is the broad, general class or genus, and when dealing with that subject for the purpose of regulation, sees fit to enact ordinances affecting and regulating both the wholesale dealer and the dram-shop keeper, it cannot then be said that their businesses are so distinct that they cannot be regulated or affected by the same ordinance, or that they may not be classified in the manner done in the ordinance in question, by allowing the one who sells in any quantity, representing the general class, to pay the greater license, and the dealer who sells only in quantities of one gallon or more, and the use and consumption of the latter sales to take place remote from the place of sale and delivery, to pay the lesser license. Absolute equality in trade can not be attained by law, but absolute opportunity to all alike to engage in the trade is the requirement within which ordinances must come to be sustained.

Section 3*a* of the Dram-shop act, in classifying dram-shops, provides that the minimum license fee for running a dram-shop shall be $500, and also provides that a license to sell malt liquors may be granted at a minimum fee of $150. As applied to dram-shops, the licensee paying $500 sells malt, vinous, fermented and all kinds of liquors, or may do so if he likes, and his business represents the genus. If he wants to sell anything besides

malt liquors he must pay $500, and although he may want to keep a dram-shop and may not want to sell malt liquors, which is a species of the general class, he must nevertheless pay $500, $150 of which is fixed by the statute as the amount he should pay if he wanted to deal in malt liquors only. Still, the validity of that law has not, to our knowledge, been attacked on the ground of unjust discrimination. Appellee calls our attention to the provisions of this statute, and says that if the ordinance in question is a discrimination because of the method of classification, the statute is subject to the same objection, and we think the illustration apt and the point well made.

The cases of *City of Cairo* v. *Feuchter*, 159 Ill. 155, and *City of Monmouth* v. *Popel*, 183 id. 634, do not seem to be in point. In the former case the city of Cairo passed an ordinance requiring a license fee of $100 of wholesale dealers but excepted from its operation all having a license to sell liquors in less quantities than one gallon, the effect of which was to require $100 a year of any one who wanted to engage exclusively in the wholesale business, and as the dram-shop keepers were only required to pay $500, the minimum allowed by the statute for such business, we held that there was discrimination in favor of the dram-shop keeper upon two grounds: First, as the dram-shop keeper paid only $500 and was allowed to sell both at wholesale and retail when the statute required him to pay $500 for keeping a dram-shop only, by excepting him from the operation of the ordinance as to wholesale dealers he got the privilege of selling at wholesale for nothing, merely by virtue of having a dram-shop license, while all other persons had to pay $100 for that privilege; secondly, the ordinance attempting to regulate the sale at wholesale did not restrict the dram-shop dealer to his dram-shop as the place where he might sell at wholesale, but, as we considered it, being excepted from the operation of the ordinance and the

only qualification being that he should hold a dram-shop license, he might start one or as many wholesale places outside or apart from his dram-shop as he saw fit and pay no license therefor. We held the ordinance an unreasonable discrimination against persons engaged in the same class of business. In the *Popel case, supra,* the ordinance provided that no person not having a license to keep a dram-shop or a druggist's permit should sell intoxicating, malt, vinous, mixed or fermented liquors, and contained no provision authorizing the conducting of the wholesale business by any person under any condition. The dram-shop keeper was required to pay $800 license fee. It did not appear that the druggist was required to pay any license fee. A wholesale dealer was arrested for selling at wholesale. We held such an ordinance invalid because of unjust discrimination, in that it conferred the right to sell at wholesale upon the druggist who held a permit and the dram-shop keeper who merely paid $800 license for running a dram-shop, and prohibited any wholesale dealer, on any terms, from engaging in the business. Such vices cannot be attributed to the ordinance in question. Its provisions are specific, clear, equal, and alike applicable and open to all persons who want to engage in either business, and except no one from its operation, and confine the business of each to the same certain or specific territory and the sales of each to specific places of business.

Under the tests we have applied and the views we have expressed it would seem the ordinance in question is valid, and that the judgment of the Appellate Court should be and the same is hereby affirmed.

*Judgment affirmed.*