WOLFE v. STATE.

## Opinion delivered February 10, 1913.

1. INDICTMENT—STATUTORY OFFENSE.—An indictment charging a statutory offense, which follows the language of the statute will be held good on demurrer. (Page 36.)

2. LIQUORS—ILLEGAL SALE OF—VENUE.—*Kinnanne* v. *State*, 286, cited and approved. (Page 36.)

3. LIQUORS—SELLING WITHOUT LICENSE.—When the proof shows the sale of four bottles of beer to one customer, the beer being kept in an ice box, there being no counters or other bar-room fixtures, the proof is sufficient to sustain a verdict of guilty under an indictment charging that defendant "did unlawfully keep a dramshop and drinking saloon without first procuring a license from the county court * * *." (Page 36.)

4. BILL OF EXCEPTIONS—ASSIGNMENT OF ERRORS.—Assignments of errors which should properly appear in the bill of exceptions, but which appear only in the motion for a new trial can not be considered on appeal. (Page 38.)

Appeal from Mississippi Circuit Court, Osceola District; *W. J. Driver*, Judge; affirmed.

### STATEMENT OF FACTS.

Appellant was indicted by the grand jury in the Osceola District of Mississippi County, charged with keeping a dram shop and drinking saloon, without having first procured a license, the charging part of the indictment being, as follows:

"Accuse Joseph Wolfe of the crime of keeping a saloon, committed, as follows, towit: Said Captain Joseph Wolfe, in the county and State aforesaid, Osceola District, on the 10th day of July, A. D. 1912, did unlawfully keep a dram shop and drinking saloon without first procuring a license from the county court from said county authorizing him so to do, against the peace and dignity of the State of Arkansas."

To this indictment a general demurrer was interposed and overruled and appellant saved his exceptions.

The sale of four bottles of beer was made on a boat in the Mississippi River off the Arkansas bank from Golden Lake Landing. The sole witness, the purchaser,

testified that he got on at the landing, and that the boat
went out and came back, and that he got off; that there
was an ice box sitting on the deck of the boat with beer
in it; that he bought four bottles of beer from Joseph
Wolfe and drank it on the boat. He did not open it him-
self, but that another man who had a bottle opener opened
it for him, and that Wolfe had nothing to do with open-
ing it. "He had an ice box, I should judge about middle
ways of the boat and the ice box had beer in it. No
counter or anything of that kind at all. Just set the bot-
tles out as we called for them. It was on the deck of the
boat." To the question: "Was there anything there at
all except the ice box that looked to you like anything you
had ever seen in a saloon or dram shop?" witness an-
swered, "That was all I seen there was the ice box with
the beer. That was all I looked for and went for. He
might have had more. I don't say he did or didn't. That
was all I seen. I suppose the boat carries passengers,
and they had some freight on it." The witness stated that
Joseph Wolfe was engaged in the steamboat business,
that he went on the boat for the purpose of getting some-
thing to drink, and got the beer from the defendant.
That the boat was in the Mississippi River. To the ques-
tion, "How far out?" he answered, "I couldn't hardly
tell you that; it was quite a piece out." "Was it on the
west side or the east side of the middle of the main chan-
nel?" "Well, it was somewhere near the middle, I should
judge. I don't know whether it was exactly the middle
or not." Declined to answer the question whether they
had reached the middle. To the question, "Where was
it between the two main shores between Arkansas and
Tennessee, with regard to the island?" he answered,
"Nearest the Arkansas side." Witness thought it was
about a mile from the Arkansas shore to the island, and
he could not hardly say now how far from the Arkansas
shore he was when he purchased the liquor. That he
went on the boat for that purpose, and didn't pay much
attention. That he was in the channel of the river be-
tween the island and the Arkansas shore. "What is

your best judgment as to whether you were nearer the island or the Arkansas shore?" "Well, I should judge we were a little nearer the Arkansas shore than we were the island." Witness only traveled in the boat about a mile and understood that the channel was about a mile wide. He judged the channel was where the navigable boats ran. That they ran mostly on this side where the water is deep.

Another witness, a civil engineer, testified from a map traced from the Mississippi River Commission's chart of the river, that from the Arkansas bank to the north end of the towhead the channel is 4,500 feet wide. That from Golden Lake Landing to the towhead in front of Golden Lake Landing, known as Booker's towhead, is about 3,500 feet, not quite three-quarters of a mile. That the chute between the towhead and island 35 at a point half-way between the ends of the towhead is about 1,100 feet wide; that the island is about two miles wide, across the middle of it, and that the total distance from the main Tennessee bank and Golden Lake Landing on the Arkansas bank is 21,700 feet. That boats go through the chute between island 35 and the main Tennessee bank; that water runs on both sides of the towhead west of the island, and he did not know whether the island was in any wise connected with the towhead or sandbar, couldn't say whether it was an accretion or an independent sandbar.

Another witness testified that boats ran in the channel between island 35 and the main Tennessee shore the year around, the regular packets. He didn't know the width of that channel, or whether it was wider between Booker's towhead and Golden Lake Landing. That the channel west of the island was also navigable.

The court instructed the jury, and from the judgment on a verdict of guilty, appellant brings this appeal.

*Appellant pro se.*

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

KIRBY, J. (after stating the facts). It is insisted

for reversal that the court erred in overruling the de-murrer to the indictment, in the giving and refusing of certain instructions, and that the testimony is not suffi-cient to sustain the verdict in that the venue was not proved and only one sale of liquor shown.

The indictment charges the offense under section 5125, of Kirby's Digest, and follows the language of the statute, which this court has uniformly held is sufficient in charging a statutory offense, and the court committed no error in overruling the demurrer. *Farmer* v. *State,* 45 Ark. 97; *Haupt* v. *State,* 100 Ark. 409-414; *Petty* v. *State,* 102 Ark. 170.

The jury could have found from the testimony of the witness, evidently an unwilling one, that the sale of liquor occurred in the channel of the Mississippi River, between the Arkansas bank and the towhead, east of island 35, and nearer to the Arkansas bank than to the towhead, or sandbar, which was distant about three-quarters of a mile, and if this channel be regarded as the main channel of the river at that point, the sale occurred nearer the Arkansas bank than the sandbar and consequently west of the middle of the main channel, and unquestionably within the jurisdiction of the State. The court correctly instructed the jury, relative to the State's eastern boun-dary, declaring the law as laid down in *Cissell* v. *State,* 40 Ark. 504, and recently followed and approved in *Kin-nanne* v. *State,* 106 Ark. 286.

It is strenuously urged that the testimony shows only a single sale of liquor, and is not sufficient to support the verdict of guilty of keeping a dram shop, and the cases of *Blackwell* v. *State,* 45 Ark. 93, and *State* v. *Mazzia,* 51 Ark. 177, are relied upon in support of this contention.

It is true that only a sale of four bottles of beer was proved in this case, and it does not appear to have been sold from a regularly equipped bar, but the witness stated that they had an ice box with beer in it, about mid-dle ways of the boat; that there were no counters, or any-thing of that kind, and that the "appellant just set the bottles out as we called for them." He drank the beer on

the boat and another man than the appellant opened it for him. He knew the beer was kept on the boat for sale, he went on the boat for the purpose of buying it, he did buy it of the appellant, and it was taken out of the ice box, the receptacle in which it was kept, and set out to him as he called for it. Under these circumstances, we do not think this case falls within the single sale doctrine, as announced in the cases relied upon by appellant. Appellant kept beer in an ice box for sale, and set it out to be drunk as it was ordered and paid for, after the manner of selling in dram shops, and we are of the opinion that the testimony is sufficient to sustain the verdict.

In *Snow* v. *State,* 50 Ark. 561, this court said: "A place where cider, birch beer, ginger ale and refreshments of like kind are sold, after the manner of dram shops as the proof shows was done in this case is a saloon within the letter and spirit of the prohibition of this statute."

"A dram shop is a place where spirituous liquor is sold by the drink, and is commonly called a saloon." 23 Cyc. p. 61. Webster defines it, "A place where spirituous liquors are sold by the dram or the drink; a bar room."

In *Brockway* v. *State,* 36 Ark. 636, the court said, "It was proved that appellant kept a saloon in the house, kept a bar in the front room; the jury doubtless understood the words, "saloon" and "bar," taken in their connection as meaning a dram shop, or grocery."

Other cases define dram shop, within the meaning of the liquor laws, as a place where spirituous, vinous or malt liquors are retailed in less quantities than a gallon. *Hewitt* v. *People,* 186 Ill. 336; 57 N. E. 1077; *Commonwealth* v. *Narzynski,* 149 Mass. 68, 21 N. E. 228-229; *Crank* v. *People,* 80 Ill. App. 40; *Strauss* v. *City of Galesburg,* 203 Ill. 234; 67 N. E. 836.

Appellant complains of the refusal of the trial court to allow the official stenographer to report the examination by counsel of jurors offered for service, and their statements on their *voir dire* and of the court reprimanding his attorney in the presence of the regular panel of

the jury offered to try the case and also of certain re-
marks of the prosecuting attorney in his argument to
the jury.

The bill of exceptions does not disclose any evidence
whatever of these matters complained of, which are only
shown in the motion for a new trial. It is the office of
the bill of exceptions to bring upon the record matters
which do not appear on the judgment roll or record
proper, and the motion for a new trial can not be used as
a vehicle for that purpose, and therefore these assign-
ments of error can not be considered here, on appeal.
*Foohs* v. *Bilby,* 95 Ark. 303; *Cox* v. *Cooley,* 88 Ark. 350;
*Cravens* v. *State,* 95 Ark. 321.

Upon the whole case, we do not find any prejudicial
error committed and the judgment is affirmed.