80

THE CITY OF FAIRFIELD, Appellee, *vs.* BILL PAPPAS *et al.*
Appellants.

*Opinion filed December 16, 1935.*

BURGESS & O'NEAL, and VIRGIL W. MILLS, for appellants.

THOMAS H. CREIGHTON, and CHARLES C. HILL, for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Bill Pappas and Lou Faulkner were before a justice of the peace found guilty of selling intoxicating liquor in the city of Fairfield in violation of an ordinance of that city passed and approved May 15, 1933, which prohibited the sale of intoxicating liquor within the city. The defendants appealed to the circuit court, and the cases were by agreement there consolidated and tried on an agreed state of facts. It was stipulated that each defendant on February 16, 1935, within the corporate limits of the city sold at retail intoxicating liquor; that Pappas in a sale made by him acted as a clerk for George Ginnopoulous, who had a retailer's license from the Department of Finance; that Faulkner had a like license, and that neither Faulkner, Pappas nor Ginnopoulous had a license issued by the city authorizing the sale of intoxicating liquor within the city. The circuit court found each defendant guilty

and fined him $50 and costs. The defendants bring the judgments for review direct to this court, the trial jud having certified that the issue involved the validity of municipal ordinance of the city and that the public intere required a review of the case by this court.

The validity of the ordinance is the only issue her The decision of that question involves the construction of certain provisions of "An act relating to alcoholic liquors, approved January 31, 1934. (Laws of 1933-34, pp. 58-94.) The city relies on sections 46, 48, 59, 66 and 102 of article 5 of the Cities and Villages act of 1872 as supporting its power to enact the ordinance in question; also section 13 of article 3, paragraph 10 of section 1 of article 7, and section 1 of article 10 of the act relating to alcoholic liquors, *supra.* By section 46 of article 5 of the Cities and Villages act power was granted cities, villages and incorported towns to license, regulate and prohibit the sale of intoxicating liquor within any such municipality, provided that in granting a license such corporate authorities should comply with whatever general laws of the State might then be in force relating to the issuance of such license. The other sections of the Cities and Villages act, *supra,* deal with the same subject matter and the power of the municipalities relative thereto.

Prior to the enactment of the Illinois Prohibition act the Dram-shop act was a general law of the State relative to the sale at retail of intoxicating liquor, and a municipality granting license therefor was required to comply, in so far as pertinent, with the provisions of that act. (*Strauss* v. *City of Galesburg,* 203 Ill. 234.) The Illinois Prohibition act in force July 1, 1921, prohibited the sale for beverage purposes of all intoxicating liquor in the State. By section 38 of that act (Cahill's Stat. 1921, chap. 43, p. 1467,) cities and villages were granted the power to adopt ordinances prohibiting the manufacture, transportation, possession, sale and gift, within their territorial lim-

its, of intoxicating liquor. This latter act was repealed in its entirety by Senate Bill No. 2, (Laws of 1933, p. 518,) and even if we were to concede that where one law is repealed by another and subsequently an act is adopted which repeals the repealing statute thereby the first statute is revived, there still remains for consideration the Dram-shop act approved January 31, 1934.

Subsequent to the passage of Senate Bill No. 2 there next followed the act in relation to the manufacture, possession and sale of malt and vinous beverages, approved April 26, 1933, (Laws of 1933, p. 518,) and the amendment thereto of July 7, 1933. (Laws of 1933, pp. 524-528.) The present Dram-shop statute, by section 2 of article 11 thereof, expressly repealed the act of April 26 and the amendment thereto, and further states: "All other laws in conflict with this act, or any of the provisions hereof, in so far as such laws and parts thereof are in conflict herewith, are hereby repealed."

It is elementary that the licensing, regulating and prohibiting the traffic in intoxicating liquor is reposed in the police power of the State. The State may reserve the power within itself or delegate it to such municipalities and political subdivisions as the legislative body of the State may deem proper. The granting of such power to such municipalities and political subdivisions is not absolute and perpetual but is revocable at the legislative will. The State may resume such powers and thereafter re-delegate the same or only a part thereof, to be exercised in accordance with the terms of the legislative grant. (*Dingman* v. *People*, 51 Ill. 277.) The Dram-shop act of 1934 in force at the time of the sales in question was enacted following the repeal of the eighteenth amendment to the constitution of the United States, and the repeal of the Illinois Prohibition act was a complete revision of the law on the subject of intoxicating liquor and provided a full and complete code relative thereto. A statute which is a

complete revision of and intended as a substitute for prior laws upon the same subject repeals all existing laws upon that subject. (*People* v. *Williams,* 309 Ill. 492; *People* v. *Town of Thornton,* 186 id. 162; *State Board of Health* v. *Ross,* 191 id. 87.) Another accepted rule in the interpretation of statutes is, that where the legislative body enacts a new law upon a certain subject, revising the whole subject matter and providing a new and different plan therefor, such new act manifests a legislative declaration that what is included in the new statute shall prevail over the provisions of the former law upon the same subject, excepting only such provisions as may be re-written into the new legislation. Such revision discloses an intent to reject such of the provisions of the former act as are not included in the later act. (*People* v. *Town of Thornton, supra; Murdoch* v. *Mayor of Memphis,* 20 Wall. 290, 22 L. ed. 439; Black on Interpretation of Laws, p. 116.) So, also, where the provisions of the two acts are clearly repugnant the later law operates as a repeal of the former, (*People* v. *Town of Thornton, supra,*) and in the construction of a statute for the purpose of ascertaining its meaning the object sought to be accomplished is an important factor meriting full consideration. *Strauss* v. *City of Galesburg, supra.*

With these fundamentals in mind we approach the present Dram-shop act for the purpose of determining its meaning as related to the issue here. A complete reversal of the legislative thought from that embodied in the Illinois Prohibition act is evinced by the present Dram-shop act. Section 1 thereof states, in substance, that the objects sought by the act are the protection of the health, safety and welfare of the people by the practice of temperance in the consumption of alcoholic liquor and the sound and careful control and regulation of the manufacture, sale and distribution thereof. Provision is made by such act for the revocation, for cause, of a liquor dealer's license at a hear-

ing before the local liquor commission of the city, village or political subdivision, an appeal is provided therefrom to the State commission, and from thence to the circuit court or superior court of the county in which the premises licensed are situated. From these provisions it is obvious that the matter of licensing a liquor dealer or revoking his license was not deemed by the State to be wholly within the power of the administrative body of the local municipality but the State retained supervisory powers over such regulations. Article 4 of the act, in so far as pertinent here, grants to the city council of cities or president and board of trustees of villages and incorporated towns the power, by general ordinance or resolution, to determine the number, kind and classification of licenses for sale at retail of alcoholic liquor not inconsistent with the act, the amount of license fee to be paid for the various kinds of licenses to be issued in such municipalities, and grants such municipalities the right to establish such further regulations and restrictions upon the issuance of and operation under local licenses as are not inconsistent with the statute and as the public good and convenience may require. Article 4 contains a further provision that, subject to the provisions of article 9 of the act, "the city council or president and board of trustees may also by ordinance or resolution prohibit until May 10, 1934, * * * all sales at retail of alcoholic liquor or any kind of alcoholic liquor within the corporate limits" of such municipality. The fact that the power of a city council or president and board of trustees of their own initiative to enact an ordinance prohibiting the sale of intoxicating liquor is limited to a period not beyond May 10, 1934, has an important significance in arriving at the legislative intent. If such power to pass such prohibitive ordinance was not intended to be circumscribed and exercised for a certain fixed period, only, beyond which such ordinance was without vitality, the provision of section 1 would be an empty gesture.

Turning now to article 9, we find that provision is made therein for the submission to the electors of a city, village or incorporated town of 200,000 or less inhabitants, of the question of *prohibiting* the sale at retail of alcoholic liquor, with a complete prescribed procedure for the submission of such question by a petition for an election thereon, the contents of such petition, the calling, notice of and the conducting of an election upon such issue, and the returns of the result of the election, with other detailed requirements usual in elections upon a local issue. It is further stated by article 9 that if a majority of the legal voters voting upon such proposition vote for the prohibition of the sale of alcoholic liquor in such municipality, sale thereof shall be prohibited, and penalties are provided for the sale of such liquor in violation of such mandate. The omission in the Dram-shop act of 1934 of any provision for prohibiting the sale at retail of alcoholic liquor within such municipality except under the authority of an election called and held as above indicated, is significant and highly persuasive that this was the only method the legislature intended to grant to municipalities under which the sale of intoxicating liquor within their boundaries could be prohibited. It was the legislative intent that the authorities of cities, villages or incorporated towns could regulate the issuance of licenses and the kind thereof, and provide regulations and restrictions upon the business of the sale at retail of alcoholic liquor in so far, only, as such regulations did not conflict with the general statute upon the subject, but that no such municipality could prohibit the sale of intoxicating liquor at retail within its boundaries except upon the will of the voters antecedently expressed at an election called and held pursuant to the statute upon the subject. The provisions of the 1934 act are therefore decisive that the sale of intoxicating liquor in cities, villages and incorporated towns cannot, in default of authority derived from an election called and held subsequent to the

passage of the 1934 act and prior to the passage of the municipal ordinance, be prohibited by the initiatory act of the city council or president and board of trustees of such city, village or incorporated town.

Counsel for the city urge that because section 13 of article 3 provides that the State commission shall not direct the issuance of a license to sell alcoholic liquor at retail unless the person applying for such license shall have first obtained a local license for the same premises contemplates that any such city may prohibit the sale of intoxicating liquor. That section, taken in conjunction with the remainder of the act, pertains to those cities and municipalities which have enacted local legislation providing for the issuance of a license for and regulating the sale at retail of intoxicating liquor, as provided by article 4 of the act. It does not mean that any city or kindred municipality can prohibit the sale of intoxicating liquor within its corporate limits by refusing to enact any ordinance for licensing and regulating such sale. In the absence of any such ordinance the commission may direct the issuance of a license by the Department of Finance, but if the city has legally legislated upon the subject of licenses, then before the applicant can secure a license from the department he must first have secured a license from the local municipality in compliance with the terms of its ordinance.

What is said with reference to section 13 of article 3 applies with equal force to the contention made by the city that paragraph 10 of section 1 of article 7 and section 1 of article 10 of the act severally contemplate that the city through its city council, or the village or incorporated town through its president and board of trustees, may of their own initiative refuse to issue any license. In construing the act all its provisions must be taken into consideration. When this is done it is obvious that the provisions of section 13 of article 3, paragraph 10 of section 1 of article 7 and section 1 of article 10 all relate to those municipalities

which have enacted ordinances providing for the issuance of licenses to those who desire to engage in the retail liquor business in any such city, village or incorporated town and regulating such business. Section 46 of article 5 of the Cities and Villages act was repealed by the Dram-shop act of 1934. It follows that the ordinance of the city of Fairfield purporting to prohibit the sale at retail of intoxicating liquor within such city is without any legal force.

The judgments of the circuit court of Wayne county are each reversed.

*Judgments reversed.*