(No. 24165.—

THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, Appellee, *vs.* THE MAYOR AND COMMISSIONERS OF THE CITY OF DANVILLE, Appellants.

*Opinion filed October 22, 1937—Rehearing denied Dec. 9, 1937.*

RALPH ROUSE, Corporation Counsel, for appellants.

M. F. KEEGAN, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The Great Atlantic and Pacific Tea Company filed in the circuit court of Vermilion county a petition for *mandamus* against the mayor and the city commissioners of the city of Danville to compel the issuance to it of a license

to sell malt beverages, at retail, at its store in Danville. The defendants moved to strike the petition. The parties entered into a stipulation of facts based upon the petition and the motion. The court awarded the writ of *mandamus*. It certified that the validity of a city ordinance is involved in the case and that the public interest requires that the cause, on appeal, should be taken directly to this court. This court has jurisdiction on a direct appeal on the record here presented. *Village of LaGrange Park* v. *Jarecki,* 321 Ill. 177.

The city of Danville adopted an ordinance regulating the sale of alcoholic beverages in that city. Article 8 of the ordinance provides, in part, as follows: "Such licenses shall be and are hereby divided into the following classes, viz.: 1. Class A [Class A licenses pertain to alcoholic beverages not here involved.] 2. Class B licenses which shall authorize the re-sale of malt beverages in bottles or sealed metal containers, for consumption on the premises where sold. * * * In the interest of public policy and morals no retail liquor license shall be granted to any firm, corporation, or person whose principal business is the sale at retail of grocery and/or meat products."

By the stipulation between the parties it was agreed that The Great Atlantic and Pacific Tea Company, on May 1, 1936, applied to the city of Danville for a class B license, and tendered a bond and a check for the amount to pay for a license for the remainder of that year. The place of business of the applicant for the license was not in an area in which the kind of beverages covered by class B licenses could not be sold. The city refused to grant the license because the plaintiff is engaged in the grocery business. Its place of business is in the business district on one of the main streets and is not in the vicinity of a church or school. A large number of clerks wait on customers in the sale, at retail, of groceries, meats, canned goods and other like provisions.

Only class B licenses, which relate to the sale of malt beverages, are involved in this case. By the ordinance, malt beverages include beer, lager beer, ale and porter which have an alcoholic content of not to exceed twenty per cent of alcohol by weight. The ordinance does not exclude from the right to sell such beverages any kinds of business except the two mentioned. The petition alleged that licenses had been issued to other persons engaged in the sale of groceries and meat in Danville, but the stipulation of facts does not include the admission that other persons engaged in the sale of groceries and meat have received licenses to sell malt beverages.

The question to be decided is whether, on the ground of public policy and morals, the city of Danville may deny to grocers and meat dealers the right to sell malt beverages in that city. The appellee contends that the only authority purporting to permit regulation by a municipality of the sale of alcoholic beverages within its boundaries is that conferred by the Liquor Control act, section 1 of article 4 of which is, in substance: "In every city, village or incorporated town, the city council or president and board of trustees * * * shall have the power by general ordinance or resolution to determine the number, kind and classification of licenses, for sale at retail of alcoholic liquor not inconsistent with this act and the amount of the local license fees to be paid for the various kinds of licenses to be issued in their political subdivision and the manner of distribution of such fees after their collection; and to establish such further regulations and restrictions upon the issuance of and operation under local licenses not inconsistent with law as the public good and convenience may require." (State Bar Stat. 1935, p. 1424.) Section 1 of article 1 of the Liquor Control act provides that it shall be liberally construed to the end that the health, safety and welfare of the People of the State shall be protected, and temperance in the consumption of alcoholic liquors shall be fostered

and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors. (State Bar Stat. 1935, p. 1421.) The power to regulate the sale of alcoholic beverages by municipalities is not unlimited. The only power they have in such respect is conferred by the Liquor Control act of 1934. (*City of Fairfield* v. *Pappas,* 362 Ill. 80; *Walgreen Co.* v. *Lenane,* 363 id. 628.) In the *City of Fairfield case* we held that the Liquor Control act of 1934 (still in force) repealed section 46 of article 5 of the Cities and Villages act, which, without limitation, had given cities and villages the right to license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, and containing other provisions not here necessary to be considered. (State Bar Stat. 1935, p. 347.) The rights of cities and villages are now subject to the State law with respect to the prohibition and regulation of the sale of alcoholic beverages as contained in the Liquor Control act. Article 9 of the Liquor Control act provides for the submission to the electors of a city, village or incorporated town of 200,000 or less inhabitants of the question whether the sale of alcoholic beverages at retail shall be prohibited. The will of the electors expressed at such election is decisive, and the entire prohibition of the sale of such beverages may not be effected in any other manner. (*City of Fairfield* v. *Pappas, supra.*) The general law declaring the State policy as to the prohibition or regulation of the liquor traffic supersedes all special charter rights of cities and villages to license or otherwise control the same. (15 R. C. L. pp. 293, 294.) The grant to a municipal corporation, by charter or general statute, of the power to regulate, license or tax the sale of intoxicating liquors within its limits does not confer authority to totally prohibit the traffic in such liquors. (33 Corpus Juris, 524.) However, when not contrary to the Liquor Control act or other State law, the Liquor Control statute of this State permits the enactment

of ordinances regulating the sale of alcoholic beverages in furtherance of the "public good and convenience," and to subserve the "health, safety and welfare of the people." The purpose of the ordinance in question is not to prohibit the sale of malt beverages in the entire municipality, without a previous vote of the voters in the city, as in the case of *City of Fairfield* v. *Pappas, supra.* The ordinance is a regulatory measure in pursuance of the public good and convenience, "in the interest of public policy and morals." A municipality may prohibit sales of intoxicating beverages in places where, by reason of the character of the place itself or of the neighborhood, the traffic may be detrimental to the morals or good order of the community. (*People* v. *Kaelber,* 253 Ill. 552; *State* v. *Clark,* 28 N. H. 176; 33 Corpus Juris, 514.) If the sale of intoxicating beverages in grocery stores and meat markets is detrimental to the public good, as is determined by the ordinance, it was within the province of the city, on the ground of classification, regulation and restriction, to enact the ordinance.

One of the arguments of the appellee is that the ordinance creates an arbitrary classification. It is contended by appellants that a sufficient reason for not authorizing the sale of malt beverages in grocery stores and meat markets is, that women and children frequently are required to go into such establishments, and because of that fact, alone, there is a distinction between grocery stores and meat markets and other kinds of business not specified in the ordinance. In *City of Chicago* v. *Netcher,* 183 Ill. 104, an ordinance was involved which provided that it was unlawful for any person, firm or corporation to have exposed for sale or to sell, any intoxicating, malt or fermented liquors in any place of business in the city of Chicago where any dry goods, clothing, jewelry or hardware was kept or exposed for sale. The owner of the store was engaged in selling the kinds of merchandise mentioned but also sold intoxicating liquor. This court held that if there was any

evil in permitting the sale of liquors in a store which sold the kind of merchandise mentioned in the ordinance the same evils would result from the sale of liquor in any other kind of store. It was held that the ordinance was discriminative against the owner of the store in question and other owners of like stores without any legal basis for the discrimination. That case is to be distinguished from this in that in the case before us the license would permit the sale of liquor for consumption on the premises. In the *Netcher case* the prohibition was general.

The test of whether a statute or ordinance is arbitrary and unreasonable is whether the means employed in the attempted exercise of the police power have any real, substantial relation to the public health, comfort, safety or welfare. (*People* v. *Village of Oak Park,* 331 Ill. 406.) The same test would be applicable under the Liquor Control act, for "the public good and convenience" is equivalent to "the public health, comfort, safety and welfare." Municipalities may adopt any means to reduce the evils arising from the sale of alcoholic beverages, reasonably adapted to that end. (*People* v. *Harrison,* 256 Ill. 102; *Kretzmann* v. *Dunne,* 228 id. 31.) When the power to act is vested in the legislative department and the means it chooses are reasonably calculated to subserve the exercise of the power, courts will not inquire whether the legislature, in delegating the power, or the subordinate legislative body selected to exercise it, acted wisely or not, and such action cannot be set aside by the court on the ground that it is unreasonable, as it is not the province of the court to pass on the reasonableness of an act of the General Assembly. The power of the judiciary in determining the constitutionality of laws or ordinances is limited to deciding whether or not the law is within the scope of the constitutional powers of the legislative department. (*People* v. *City of Chicago,* 321 Ill. 466.) A municipality has only the limited power of legislative enactment conferred upon it by the law of its crea-

tion, (*Village of Kincaid* v. *Vecchi,* 332 Ill. 586,) but when such power is conferred on the municipality its exercise by the latter agency is the exercise of the power of the legislature. *People* v. *City of Chicago, supra.*

The right to engage in the liquor traffic is not an inalienable right guarded by the organic law. It is not a right of citizenship nor one of the privileges and immunities of citizens of the United States. It involves no constitutional right which is violated by the mere curtailment or termination of its exercise. The regulation and restriction of the right to sell alcoholic beverages is referable to the police power which has resided in the States since the beginning of the present system of government. The policy of the State has long been to consider the right to traffic therein as permissive, only. This is based upon the theory that the unbridled use is inimical to the welfare of the people, and also upon its revenue producing potentialities. There is, therefore, no inherent right to sell alcoholic beverages in any such sense as to remove the traffic from the legitimate sphere of legislative control. *People* v. *Harrison, supra; Crowley* v. *Christensen,* 137 U. S. 86, 91; *Sawyer* v. *Gallagher,* 151 Iowa, 64; 33 Corpus Juris, 499.

The ordinance here in question applies generally to all grocery stores and meat markets in the city of Danville, whether conducted by corporations, firms or individuals. Certainly the guarding of women and children from any close contact with the sale of alcoholic beverages may be for the good of a city. The suggested reason for the classification and restriction mentioned is not of an arbitrary nature. The two kinds of business specified in the ordinance may well be differentiated from the business of other retail stores in which such merchandise as hardware, clothing, jewelry and the like is sold. The purchase of meats and food products is of almost daily necessity. The effect of the ordinance is to free the sale of these products from the possible insidious influence accompanying the sale of

alcoholic or malt beverages. The subject matter of the ordinance was within the scope of the constitutional power of the State to delegate to municipalities. The ordinance does not contravene any provision of the State or Federal constitution, is not repugnant to any of the provisions of the Liquor control act of the State, and the classification and regulation contained in the ordinance affecting the business of appellee was one which the city of Danville might make for the public good and convenience, as the statute provides. While we might differ with the views of the city council as to any injurious results traceable to the sale of malt liquor, in bulk, in the designated class of dealers, it, nevertheless, is not within our province to substitute our views for those of the legislative department of the city.

The ordinance is valid and the trial court should have refused the writ of *mandamus.* Its judgment is reversed.

*Judgment reversed.*