**Michael GIANESSI and Joseph Gianessi, Plaintiffs–Appellants,**

**v.**

**CITY OF PEKIN, a municipal corporation, and David Tebben, in both his individual capacity and official capacity as Mayor and Liquor Commissioner of the City of Pekin, Defendants–Appellees.**

**No. 01–4353.**

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 24, 2002.[*]

Decided Nov. 20, 2002.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before BAUER, POSNER, and KANNE, Circuit Judges.

## ORDER

In 1994, Michael Gianessi bought a building at 431½ Court Street in Pekin, Illinois, planning to open a bar and restaurant. Michael brought in his brother Joseph as a business partner and, by 1995, "Gianessi's" opened. Without incident, Joseph applied for and received a liquor license for Gianessi's in 1997 and 1998 from Dave Tebben, who at all relevant times was both Pekin's mayor and its liquor commissioner. But when he attempted to renew that license in April 1998, Tebben denied the application citing infractions of the Illinois Liquor Act. The Gianessis appealed that denial to the Illinois Liquor Commission, which affirmed Tebben's decision. They did not, however, appeal the Commission's affirmation of Tebben's denial to the state circuit court.

Instead, Michael and Joseph filed a two-count § 1983 claim against the City of Pekin and Tebben alleging violations of their First and Fourteenth Amendment rights arising out of Tebben's refusal to renew their liquor license. The Gianessis alleged that the Liquor Act infractions were mere pretext for Tebben's denial and that he had improperly declined to renew the license because Michael had supported Tebben's political opponent in the 1995 Pekin mayoral election and because Michael had since befriended Tebben's ex-wife.

The district court granted summary judgment in favor of the City of Pekin and Tebben ruling (I) that Tebben, as Pekin's liquor commissioner, was entitled to absolute immunity under Illinois law in deciding whether to grant or renew liquor licenses and (ii) that the Gianessis had failed to present either sufficient custom evidence or evidence that Tebben acted with final policymaking authority in order to hold the City of Pekin liable under the *Monell* municipality-liability standard. The Gianessis appeal, arguing that the district court erred (I) in granting Tebben absolute immunity because Tebben's conduct exceeded the protection afforded liquor commissioners acting within the scope of their official duties and (ii) in finding no material issue of fact as to whether Tebben was a final policymaker. For the following reasons, we affirm.

## Analysis

We review grants of summary judgment de novo, viewing all facts and drawing all reasonable inferences in favor of the non-moving party. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1063 (7th Cir. 2000). A nonmovant wishing to survive summary judgment may not rely upon allegations contained in the pleadings but must respond to a motion for summary judgment by setting forth particular facts indicating that there exists a dispute over a material issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no reasonable juror could find for the non-movant, summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## I. Tebben

Under Illinois law, when a local liquor commissioner decides on the renewal and revocation of licenses, he does so in a judicial capacity and therefore benefits from absolute immunity. *Reed v. Village of Shorewood*, 704 F.2d 943, 951–52 (7th Cir.1983). We have noted that in reviewing liquor-license applications, a commissioner's function mimics that of a trial court judge. *Id.* at 951. Moreover, the Illinois Liquor Commission exercises appellate-like review of the local commission-

er's decision, which provides a remedy for an erroneous decision. Thus, although there is a potential for error in the liquor commissioner's decision (as with any judicial decision), there exists an effective mechanism to correct that error without seeking to hold the liquor commissioner personally liable for creating it. As we noted in *Reed*,

> [t]he basis of the absolute immunity of judges is less that they are unlikely to commit wrongs than that their wrongs are largely remediable through the appellate process and that forcing judges to defend their judicial rulings by standing trial on the complaint of a disappointed litigant would make it difficult for them to carry out their judicial duties and for society to recruit competent judges.

*Id.* at 952. As a result, Tebben, as liquor commissioner, is accorded absolute immunity when deciding whether to renew liquor licenses.

Attempting to avoid this conclusion, the Gianessis first argue that although absolute immunity may absolve Tebben from liability while acting in his "individual capacity," it does not protect him in his "official capacity." Second, the Gianessis continue to maintain that Tebben's conduct extended beyond his role as liquor commissioner because his decision was motivated by personal animus; therefore, he cannot claim immunity. Both arguments fail.

First, in seeking to hold Tebben liable in his "official capacity" as liquor commissioner, the Gianessis in essence seek to hold the municipality liable on the official actions of its agent. "Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n.

55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "Accordingly, a § 1983 suit naming defendants only in their 'official capacity' does not involve personal liability to the individual defendant." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir.2000). On this basis, the Fifth Circuit reasoned that "[i]n any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued, there potentially exists an overlapping cause of action. The official-capacity claims and the claims against the governmental entity essentially merge." *Id.* at 485. Thus, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Here, the Gianessis have sued both Tebben and the City of Pekin asserting claims arising solely out of Tebben's refusal to renew the liquor license. And so, the Gianessis official-capacity claims against Tebben merge with their § 1983 claims against Pekin (which we address below), and do not, because they cannot, provide an alternative avenue of relief against Tebben personally.

The Gianessis next claim that Tebben can't reap the benefits of absolute immunity because he acted with improper motives in denying the license—namely, that Tebben acted out of spite because of Michael's relationship with Tebben's ex-wife and because Michael was an outspoken supporter of Tebben's political opponent. Whether Tebben acted with such improper motivation is irrelevant and insufficient to defeat summary judgment. *Newman v. Ind.*, 129 F.3d 937, 942 (7th Cir.1997) (finding it "irrelevant that [the judge] may have erred or that he may have had an improper motive"). As *Reed* established, Tebben's actions as liquor commissioner in deciding upon liquor applications (irrespective of the fact that he was also mayor) were judicial, and thus entitled to absolute

immunity regardless of whether his actions were improperly motivated. Indeed, the availability of appellate-like review of Tebben's decision by the Illinois Liquor Commission and ultimately by the circuit courts of Illinois, of which the Gianessis availed themselves to a point, provides an effective direct remedy for judicial bias. It is precisely because disgruntled litigants (using that term loosely) may so easily allege bias, prejudice, or improper motive in a collateral attack against an unfavorable ruling that the doctrine of absolute immunity works to insulate those protected against § 1983 liability, be they traditional judges or those for whom by nature of their function we have extended the doctrine's protection. The Gianessis' challenge in light of this well-settled principle is meritless.

## II. Pekin

Tebben's individual immunity does not extend to the City of Pekin. *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). As such, we must determine whether Tebben's actions could confer liability upon the municipality. But a municipality may not simply be held vicariously liable for the actions of its employees; under § 1983, it may be liable only for its *own actions* when its policy or custom inflicts injury. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There are three ways to establish the existence of a municipality's policy or custom: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a practice so widespread that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; and (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Baxter v. Vigo County*

*Sch. Corp.*, 26 F.3d 728, 734–35 (7th Cir. 1994).

The only municipal-liability argument that the Gianessis assert on appeal is that Tebben, as mayor, acted as a final policy-maker in denying the Gianessis' liquor application. In support of that argument, the Gianessis trumpet Tebben's mayoral status as evidence creating an issue of fact over whether he acted as Pekin's final policymaker. By focusing solely upon Tebben's position in the hierarchy of Pekin city government, however, the Gianessis misunderstand the final-policymaker doctrine, the application of which to the undisputed facts was fully addressed and correctly analyzed by the district court (whose decision, as such, is largely reproduced here). The Gianessis' argument, which fails to point to a single flaw in law or logic in the district court's reasoning, is meritless.

"[I]dentifying those vested with the authority to make policy is no mean feat." *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir.1995) (citation omitted). Whether an official has final policymaking authority is a question of state law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), including "state and local positive law as well as 'custom or usage' having the force of law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (citation omitted). Thus, Illinois and City of Pekin law guides us in determining whether Tebben exercised final policymaking authority to issue and renew liquor licenses.

Under *Monell*, a final policy*maker*, as the name itself implies, must have the authority to make policy, laws, or rules for the conduct of government. *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir.1992). It is a role akin to legislative power; a policy-

maker decides rules that "govern tomorrow's case under a law or a custom with the force of law." *Id.* Therefore, a person who merely implements existing law—rather than creating it—does not act with policymaking authority. *Id.* at 399–400.

Illinois law and City of Pekin ordinances establish that Mayor Tebben, acting in his capacity as local liquor commissioner, implements state and local law and does not create it. Under Illinois law, the state holds the power to regulate liquor: "It is elementary that the licensing, regulating, and prohibiting the traffic in intoxicating liquor is reposed in the police power of the State." *City of Fairfield v. Pappas,* 362 Ill. 80, 199 N.E. 292, 293 (1935). The Liquor Control Act—which was intended to cover all questions arising from the control of alcoholic liquors, *see Retail Liquor Dealers Protective Assoc. v. Fleck,* 408 Ill. 219, 96 N.E.2d 556, 558 (1951) provides for the exercise of this power by the Illinois Liquor Commission. The state may delegate this power "to such municipalities and political subdivisions as the legislative body of that state may deem proper," *Pappas,* 199 N.E. at 293, and did so—granting to "every city ... the power by general ordinance or resolution to determine the number, kind, and classification of licenses, for sale at retail of alcoholic liquor not inconsistent with this Act." 235 Ill. Comp. Stat. 5/4–1 (2002).

Under Illinois law, "mayor[s] ... shall be the local liquor control commissioner[s] for their respective cities ... and shall be charged with the administration in their respective jurisdictions of the appropriate provisions of this Act and of such ordinances and resolutions relating to alcoholic liquor as may be enacted." *Id.* at 5/4–2. This provision clearly charges the mayor with the administration—that is, the *enforcement*—of the laws, an executive function. Likewise, Pekin's ordinances (creat-

ed under the authority delegated to it by the state) also charge the mayor with the administration of the liquor laws and go on to detail a rigid legal framework governing that administration by providing procedures, rules, and grounds for the application, renewal, and revocation of licenses as well as the requirements for use of liquor licenses. Pekin, Ill.Code Bus. and Licenses Regulations and Taxation ch. 3 §§ 3–3–2 to 3–3–3–9.

■ Against the backdrop of this legal framework, the district court correctly concluded that although state law has granted the City of Pekin the power to pass ordinances, regulations, and resolutions regarding liquor licensing (the stuff which policymakers are made of), it has not vested that power within the office of the local liquor commissioner. Rather, state law charged the local liquor commissioner with the administration of the laws. And Pekin, exercising its delegated policymaking authority through its city council's legislative role, further defined and restricted the local liquor commissioner's authority in administrating those laws. Neither this Court nor the district court have found, and the Gianessis have not pointed to, any state law or local ordinance that further delegates to the local liquor commissioner the power to make additional rules and regulations on Pekin's behalf. Nor has the plaintiff provided any evidence to establish an issue of fact as to whether Pekin had a policy or custom of such delegation. *Cf. Kujawski v. Bd. of Comm'rs,* 183 F.3d 734, 739 (7th Cir.1999) (finding an issue of fact as to whether the Board had as a matter of custom delegated final policymaking authority to an official where the plaintiff provided evidence that the Board never reviewed that official's decision). Therefore, regardless of his hierarchal position as mayor, Tebben

**270**

merely administered the liquor laws and did not act as a final policymaker.

This finding is further supported by the availability of appellate-like review of Tebben's decision. Review of the decisions of the pertinent official establishes that the reviewing individual or body has retained the authority to measure the official's conduct in conformance with their policies, *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915, and indicates that the official enforces law or exercises executive power. Here, the Act establishes a procedure for review of the local liquor commissioner's decision to the Commission and from there to the circuit court of the county in which the premises are situated. 235 Ill. Comp. Stat. 5/7–9; *Pappas,* 199 N.E. at 294. "From these provisions it is obvious that the matter of licensing a liquor dealer or revoking his license was not deemed by the State to be wholly within the power of the administrative body of the local municipality, but the State retained supervisory powers over such regulations." *Id.* In addition, review of the local commissioner's decisions is consistent with the conclusion that the state has retained authority to measure the official's conduct in conformance with the Act and its policies. Thus, the Gianessis' position that "interference with their business was a policy orchestrated at the highest level of government by the Mayor/Liquor Commissioner of Pekin" is legally and factually unfounded. Because his decisions are guided by the policies of another, Tebben is not a final policymaker for § 1983 purposes.

Conclusion

Because Tebben is personally immune from suit and because Tebben was not a final policymaker for § 1983 purposes so

as to subject the City of Pekin to liability, the district court was correct in granting the defendants' motion for summary judgment. Consequently, its order entering summary judgment is AFFIRMED.